## Smith versus National Life Insurance Company.

103      177
30 SC ¹460

1. Where a policy of life insurance provided, that the company would, if requested, "after the payment of premiums for two full years, issue a paid-up policy" for a specified amount, but was subject to the usual covenant by the assured, to pay the premiums on the day they fell due, and to the stipulation that in case of the violation of any of the conditions the policy would be void.

Held, that a request for the issue of a "paid-up" policy must be made while the original policy was in full life, and not after it had become forfeited for non-payment of premiums.

2. Bussing v. Ins. Co., 34 Ohio 226, and People v. Ins. Co., 15 Hun 8, followed; Dorr v. Ins. Co., 67 Me. 438, Johnson v. Ins. Co., 9 Ins. L. J. 189, Montgomery v. Ins. Co., 8 Ins. L. J. 300, and Winchell v. Ins. Co., 8 Ins. 651, distinguished.

3. In such a case neither evidence of declarations made concerning the character of such policies, by agents of the company on other occasions, nor the opinion of an insurance actuary as to the meaning usually put, by insurance companies, upon a certain clause, is admissible.

4. An insurance company which is in the habit of sending notices to its assured of the time when the premiums are due, is not obliged to continue the practice, and the neglect of the assured to pay at the proper time is at his own risk.

March 30th 1883. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

ERROR to the Court of Common Pleas No. 2, of Philadelphia county: Of January Term 1883, No. 294.

This was an action of assumpsit by William Hastie Smith and Isabella his wife, in the right of the wife, against the National Life Insurance Company, upon a policy of life insurance, to recover damages for the refusal of the company to issue a paid-up policy to the plaintiff.

Defendants pleaded non assumpsit, and specially that their refusal was upon the ground that certain premiums were not paid according to the terms of the policy and therefore the

7 OUTERBRIDGE.—12

plaintiffs had no cause of action. The plaintiffs demurred to the special plea, claiming that it was no answer to the declaration; and the court gave judgment for the defendants on the demurrer. (First assignment of error.)

The policy of insurance, which was for three thousand dollars, payable in fifteen years, was issued to Isabella Smith on October 20th 1868, the premiums thereon being due in October and April of each year, and contained, inter alia, the following provisions: " And the said company further agree, that after due payment of premiums for full two years, they will, if requested, on the surrender of this policy, duly receipted, issue another policy, payable as herein provided, on which no further premium shall be required, on the life of the person whose life is hereby insured, for as many fifteenth parts of the original amount hereby assured as there shall have been complete annual payments paid." And further : " This policy is issued and accepted by the insured, and the holder thereof, on the following express conditions and agreements : Second. That the premiums shall be paid in cash on or before the days upon which they would become due, at the branch office of said company defendant, in the city of Philadelphia, or to their duly authorized agents when they should produce receipts signed by the president or secretary. Fifth. That in case of the violation of the foregoing conditions, or any of them . . . the said policy or instrument of writing should become null and void, and that all payments made thereon should be forfeited to the company."

The plaintiffs paid the premiums regularly for ten years, but the semi-annual premium for October 1878, and those accruing thereafter were not paid, owing, as alleged, to the failure of the company to send notices of the fact that the payments were due.

On October 2d 1880, the plaintiffs applied for a paid-up policy of two thousand dollars, being ten-fifteenths of the amount of the original one. This was refused by the company on the ground that by the express terms of the policy, the plaintiffs had forfeited their rights under it, by the non-payment of premiums since October 1878.

On the trial, before FELL, J., the plaintiffs offered to prove that the defendants were by their agents, at the time this policy was issued, declaring to other parties whom they were soliciting to take policies, and to the policy-holders, that defendants' policies were non-forfeitable. Offer rejected. (Second assignment of error.)

The plaintiff's counsel also called the actuary of the company, to whom he propounded the following question : " Look at the clause of the policy which has respect to the non-forfeit-

ing of the policy, after the payment of two years' premiums (the policy in question shown the witness), and, looking at it, state if you have knowledge of what construction insurance companies, at the time that policy was issued, placed upon that clause, and what that construction was." Objected to. Objection sustained. (Third assignment of error.)

It also appeared that in the prospectus of the company that the policies were all referred to as " non-forfeitable."

Upon the close of the plaintiffs' testimony the defendant's counsel moved for a non-suit, which the court granted, and subsequently refused to take off. (Fourth, fifth and sixth assignments of error.) Whereupon the plaintiffs took this writ, assigning for error, the entry of judgment upon the demurrer, the exclusion of testimony, as above noted, and the refusal of the court to take off the non-suit.

*Arthur M. Burton,* for plaintiffs in error.—The provision for the forfeiture of all payments made, applies only to the first two annual payments, because after that, by the express terms of the policy the insured is entitled to receive a paid-up policy for an amount proportionate to the annual premiums paid, which is irreconcilable with a forfeiture. To say that a policy shall be forfeitable after the payment of two annual premiums, and that the new policy shall be issued upon the surrender of the old one for a proportionate amount of the premiums paid, are incompatible terms.

In Metropolitan Insurance Co. *v.* Drach, 12 W. N. C. 378, and Winchell *v.* Ins. Co., 8 Ins. L. J. 651, which were similar to this case, the construction for which we contend was sustained, and see Door *v.* Ins. Co., 67 Me. 438 ; Johnson *v.* Ins. Co., 9 Ins. L. J. 189. In Montgomery *v.* Ins. Co., (Ky.) 8 Ins. L. J. 300, it was held, that upon failure to pay any annual premium the contract ceased and determined only so far as concerned the right to continue further payments and demand the original sum, not as to the right to a commuted portion. A condition in a policy of insurance " being the language of the company, must, if there be any ambiguity in it, be taken most strongly against them," and in favor of the insured : Broome's Leg. Max. p. 598 ; Knecht *v.* Mut. Life Ins. Co., 9 Norris 118 ; Kronk *v.* Ins. Co., 10 Norris 300 ; Mears *v.* Humboldt Ins. Co., 11 Norris 15 ; Western Ins. Co. *v.* Cropper, 32 Pa. St. 351 ; Buckley *v.* Garrett, 11 Wr. 204. The clause of the policy relating to the forfeiture ought to have been construed in connection with the declaration made by the defendants in their prospectus and book of rates, where it was distinctly set forth that all policies were non-forfeitable : Aldridge *v.* Eshleman, 10 Wr. 420. The evidence offered tended to show what construc-

tion the defendants put upon their policies by their uniform
unqualified declarations that their policies were non-forfeitable.
Parol evidence in explanation of the subject-matter of such a
contract is admissible : Barnhart *v.* Riddle, 29 Pa. St. 92 ;
Clarke *v.* Adams, 2 Norris 309.   At any rate, the failure of the
defendants to send notices that the premiums were due, excused
the assured's default : Helme *v.* Ins. Co., 11 P. F. S. 107.

*R. C. Dale* (with whom were *S. Dickson* and *Wm. Mc-
George*), for defendant in error.—The construction placed upon
the policy by the court below is in accordance with reason, and
with the weight of authority : Bussing *v.* Ins. Co., 34 Ohio 222 ;
People *v.* Ins. Co., 15 Hun 8.   The policy must be regarded as
the ·contract· which . defines the rights of the parties, and its
terms cannot be varied by proof that the plaintiffs read a pros-
pectus before applying for the policy.   The negotiations, both
written and verbal, which precede the consummation of a
written contract, must be regarded as merged in the writing :
Ruse *v.* Ins. Co., 23 N. Y. 516 ; Allegaert *v.* Smart, 10 W. N.
C. 29 ; Thorne *v.* Warfflein, 12 W. N. C. 425 ; Martin *v.*
Berens, 17 Sm. 459.   The assured was not excused from pay-
ment of premiums, by the fact that the company failed to notify
him when they were due : Thompson *v.* Ins. Co., 14 Otto 252.

Mr. Justice CLARK delivered the opinion of the court,
October 3d 1883.

The policy in suit was issued by the National Life Insur-
ance Company of the United States of America, on the 20th
of October 1868 ; it was upon the life of William Hastie Smith,
to his wife Isabella, in the sum of three thousand dollars.

The consideration of the contract, apart from the represen-
tations made in the application, was the sum of $46.59, in hand
paid, and the semi-annual payment of a like sum, on or before
the 20th October and April, in every year, during the contin-
uance of the policy, until fifteen full payments were made : the
last to be made on the 20th April 1883.

The policy contained the following provision :

" And the said company further agree, that after due pay-
ment of premiums for two full years, they will, if requested, on
the surrender of this policy, duly receipted, issue another pol-
icy, payable as herein provided, on which no further premium
shall be required on the life of the person whose life is hereby
insured, for as many fifteenth parts of the original amount,
hereby assured, as there shall have been complete annual pre-
miums paid."

The plaintiff paid the premiums regularly for ten years ; the
semi-annual premium for October 1878 and those subsequently

accruing were not paid. On the 2d of October 1880, application was made for a paid up policy for $2,000, being ten fifteenths of the amount of the original, according to the provision of the clause above quoted. This application was refused by the company, upon the ground, that under the express terms of the policy, the plaintiffs had forfeited their rights under it, by non-payment of premiums. This action was, therefore, brought to recover damages, for such refusal.

In the clause quoted, there is no limitation as to the time when a policy must be surrendered, in order that the holder may receive a paid-up policy for a fractional part of the original sum, excepting that the surrender must be "after due payment of premiums for two full years."

The policy further provides however:

" This policy is issued and accepted by the insured, and the holder thereof, on the following express conditions and agreements :

" Second, that the premiums shall be paid in cash on or before the days upon which they become due at the branch office of said company in the city of Philadelphia, or to their duly authorized agents, when they produce receipts signed by the president or secretary.

" Fifth, that in case of the violation of the foregoing conditions, or any of them, or of the insured dying by his own hand, or in consequence of a duel, or in consequence of violating the laws of the United States, or of any nation, state or province, this policy shall become null and void, and all payments thereon shall be forfeited to said company."

Under the rule of construction, which requires that full effect must be given to every stipulation in a contract, the provision, first quoted, must be read in connection with the second and fifth conditions. The obvious and natural meaning of these conditions, taken together, is, that unless the premiums are paid on or before the day upon which they become due, respectively, the entire policy shall become void; and all payments made shall be forfeited to the company. The payment of the premiums constitutes not only the consideration but the condition of the contract.

The provision for forfeiture is not limited to the first two annual premiums, it is general and applies to all. In the previous clauses of the policy, the number and amount of these premiums are particularly specified, and the time is fixed for the payment of each, the last being payable on the 20th day of April 1883. The second condition requires that " the premiums shall be paid in cash on or before the days upon which they become due." There is no discrimination, or distinction, the condition is applicable to all. The effect of the second and

[Smith *v*. Nat. Life Ins. Co.]

fifth conditions, therefore, when read in connection with the previous clause, providing for a surrender of the original and the issue of a paid up policy, is to abridge its operation and only to give it effect when that surrender is made in the lifetime of the policy. That is to say, during some current year for which payment has been made, and before or on the day the annual premium is payable. If any condition of the policy is violated, the whole instrument by its own terms is rendered null and void; and when the policy became void, none of its provisions remained, neither party had any further rights under it.

The policy, was however, by its terms non-forfeitable, if the assured chose at the proper time to avail himself of the right it secured. He had a special right, peculiar to the holder of this class of policies, upon discovering his inability to pay, at the time fixed by the conditions of his contract, to surrender and avoid a forfeiture. That right existed until forfeiture occurred, then all rights ceased.

This construction results from the obvious force of the language employed, indeed the words of the policy admit of no other. A condition in a policy of insurance, being the language of the company, must, if there be any ambiguity in it, be taken most strongly against them; if reasonably susceptible of two interpretations, it is to be construed in favor of the assured, so as not to defeat, without plain necessity, his claim to indemnity which it was his object to secure; but we discover no ambiguity here, the expression of the policy is clear and its meaning unmistakable. Any other construction would be plainly contrary to the express condition that if "the policy became null and void" all payments made thereon shall be forfeited to said company.

The several contracts, upon the construction of which were ruled the cases of Dorr *v*. Insurance Co., 67 Me. 438; Johnson *v*. Insurance Co., 9 Ins. L. J. 189; and Montgomery *v*. Insurance Co., 8 Ins. L. J. 300; were not similar in their provisions to that in suit. In each of these cases, it was plainly stipulated that if after payment of a certain number of the premiums, those subsequently accruing were not paid when due, and forfeiture ensued, the company would still be liable for such part thereof as is proportionate to the annual payments made. These cases are therefore not in point, they are distinguished in this, that they were on policies which were non-forfeitable and which had an acknowledged value after a failure to pay a premium.

The case of Bussing *v*. Insurance Co., 34 Ohio 226, is, however, in all respects similar to this. The policy, in that case, contained substantially the same provisions for a paid-up policy, followed by a condition, "that if the amount of any annual

premium, herein provided for, is not fully paid, with interest due thereon, on the day and in the manner so provided for then this policy shall be null and void and wholly forfeited;" and in case the policy "becomes null and void, all payments made thereon, and all dividends and credits accruing therefrom, and remaining unpaid shall be forfeited to the company;" it was held, that the right of the policy-holder to make the exchange was required to be exercised during the life of the policy.

"It was not the intention of the parties, in the event of the policy becoming void, on default in the payment of premiums, that it should still remain good as a policy pro tanto, for the premiums, which had been paid." To the same effect is the case of People *v.* Widows' Insurance Co., 15 Hun 8.

In the case of Winchell *v.* Insurance Co. (U. S. C. C. Mass.), 8 Ins. L. J. 651, relied upon by plaintiff in error, the provision for a paid-up policy, and the conditions upon which the original was issued and accepted, are in most respects similiar to the provisions and conditions of the policy in suit, but that case is distinguishable from this, in the fact, that the condition, was expressly "subject to the provisions of ch. 186 of the Acts of the Legislature of Massachusetts, in the year 1861, entitled An Act to regulate the forfeiture of policies of life insurance."

The statute, referred to, continued in force all life policies for a time reckoned according to their net value, notwithstanding a failure to pay the premiums, provided that notice of the claim and proof of the death, should be submitted to the company within ninety days after the decease of the assured. The assured had paid eight annual premiums including that due June 1st 1873; he died December 17th 1877.

The bill alleged that the payments upon the policy were sufficient, under the statute of Massachusetts, referred to in the policy, to continue it in force until after the death of the assured.

The defendants maintained that the two clauses taken together meant that the option must be exercised before there was a forfeiture.

The learned court, LOWELL, J., although admitting the case of Bussing's Ex'rs *v.* Union Mutual Life Insurance Company, *supra*, was an authority for this construction, and that it seemed to reconcile the apparent discrepancies in the two clauses, and to be consistent with all the words used, "after much doubt" adopts the plaintiff's construction, assigning as a reason for so doing, that "the assured in reading his policy would suppose that he need give himself no uneasiness about the premiums, for that he could always be sure of a policy, as large as those he had paid would warrant." We are inclined to adopt the

construction, which is "consistent with all the words used," and "reconciles all apparent discrepancies" rather than one which results from the belief of what the defendant might "suppose" on the reading of the paper. But, the court adds "even if we supplied the words, 'while the policy is in force,' the policy was in full force, for the whole amount, when the assured died. It was in force in all respects and to all intents and purposes, and subject to be forfeited if the assured did any act prohibited by the conditions, such as traveling in certain countries, and engaging in certain occupations. In other words, up to this time, it was not forfeited at all, except as to the right of extending it beyond the time to which the statute extended it."

We are of opinion, therefore, that the court below was right in entering judgment for the defendant, on the demurrer to the defendant's special plea.

The testimony offered, the exclusion of which is complained of in the second and third assignments, was clearly inadmissible; it was a matter of no moment what statements the defendant's agents may have made, on other occasions, to other people, as to the effect of this form of policy. Nor was it material how others, in the same line of business, may have construed it.

We are of opinion also, that the court was right in refusing to take off the non-suit entered at the trial; the policy defines the rights of the parties; its terms cannot, in the absence of fraud or mistake be varied by parol proof of what transpired at the time. Where equity would set aside or reform the instrument, parol evidence is admissible to contradict or vary its terms, but not otherwise. As expressed by Mr. Justice WILLIAMS, in the case of Martin *v.* Berens, 17 P. F. Smith 459, " Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement, and we are not disposed to relax the rule." "Nor," as stated by Mr. Justice GREEN, in Thorne *v.* Warfflein, 3 Out. 519, " can we throw the whole case into the jury box, on the ground of fraud, simply because one of two parties to a written contract testifies that there were parol stipulations, contradictory of the terms of the writing, agreed to at the same time. There must be evidence of fraud other than that which may be derived from the mere difference in the parol and written terms." The principles which govern the admission of parol evidence affecting written instruments are well established. For some purposes, which are well defined, it is admissible: Martin *v.* Berens, supra; but as a general rule it is not received to contradict or vary the terms of a written

agreement.   The pamphlet is not referred to in the policy ; it is not annexed to it ; it contains statements of the company as to the special features of the several forms of contract which they are authorized to make, but in the absence of proof of fraud or mistake, all previous regulations and propositions in relation to the contract, are merged in the final agreement.

In the case of Ruse v. Ins. Co., 23 N. Y. 516, a " prospectus " was offered in evidence for the same purpose for which the pamphlet was offered here, and in a cause somewhat similar in its facts, the prospectus offered thirty days' grace in payment of premiums, and contained a clause, " every precaution is taken to prevent a forfeiture of the policy," but the prospectus, in the Court of Appeals, was held to be inadmissible, to affect the company under their contract, as a proof of waiver or by way of estoppel.

It is contended that the failure of the defendant company to send the customary notice excused the plaintiff's default. By the terms of the contract it was certainly the duty of the assured to pay on the day stipulated whether he received notice or not ; he knew, or was bound to know, the several dates at which the premiums were due, and his neglect to pay was at his own peril ; the company was under no obligation to give the notice : Thompson v. Insurance Co., 14 Otto 252.  Assuming, however, that the assured may have been misled by the company's course of business, there can be no apology or excuse for two whole years' neglect upon that ground ; such a default could not be traced to the misleading effect of the company's uniform practice in sending notices.

The judgment is therefore affirmed.