# Francis *v.* Prudential Insurance Co., Appellant.

*Contracts—Insurance policies—Construction—Intention — Extended insurance—Forfeiture—Notice—Case for jury.*

1. If there be ambiguity in the condition of a policy of insurance, those conditions are to be taken most strongly against the insurer and in favor of the insured.

2. Where a policy of insurance is in the language of the insurance company the presumption is that its express provisions contain all the conditions intended to be imposed.

3. Cases which are doubtful on their facts or on the inferences which may be drawn from the facts are for the jury and not for the court.

4. In an action of assumpsit on a life insurance policy providing that if the policy "having lapsed or become forfeited as above, is not surrendered for a paid-up policy, the company will write in lieu of this policy, and without any action on the part of the insured a non-participating paid-up term policy for the full amount insured by this policy and to continue in force for the term indicated by the following table of extended insurance," it appeared from the table that if at the end of five years the policy should lapse, the insured would be entitled to extended insurance for an

additional term of five years and seventy-eight days; that more than four years and less than five years before his death and five years from the date of the policy the insured had stopped paying premiums, at which time he was indebted to the company for loans aggregating $86.27, that the policy had not been surrendered, and that the deceased was entitled to extension insurance at the time of his death, unless as defendant contended, the duration of extended insurance was reduced on account of the insured's indebtedness to 308 days, that being the amount of extended insurance that could be purchased by the legal reserve for the policy in which case the extended insurance would have terminated four years before the death of the insured. The lower court decided that the insured was entitled to an extended term of five years and seventy-eight days, although he was indebted to the company at the date of the lapse and that the rights of the defendant were fully protected by allowing it credit for the indebtedness of deceased with the interest accumulated thereon. *Held,* no error.

5. Where in such case provision was made for the forfeiture of the policy by the company under certain circumstances, and it appeared that the circumstances had arisen which would authorize the company to forfeit the policy and defendant offered evidence that it had notified the insured of such forfeiture by depositing a properly addressed letter in the mail, but plaintiff denied that the notice had ever been received, the court made no error in submitting to the jury the question as to whether or not the notice had been received and a judgment on a verdict for plaintiff was sustained.

Argued Oct. 29, 1913. Appeal, No. 207, Oct. T., 1913, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct T., 1910, No. 735, on verdict for plaintiff in case of Hannah Francis v. The Prudential Insurance Company of America. Before Fell, C. J., Brown, Potter, Elkin and Moschzisker, JJ. Affirmed.

Assumpsit on a life insurance policy.

The facts appear by the following opinion of Reid, J., sur defendant's motion for a new trial and for judgment n. o. v.

Plaintiff, the widow of Joseph M. Francis, sues to recover upon a policy of insurance issued by defendant on the life of her husband. The form of policy was

known as the "Annual Dividend Whole Life." It bears date January 27, 1899, and provides for the payment of the sum of $1,500 to the plaintiff, in the event of death of the assured. The premium thereon was to be paid in quarterly installments of $13.04.

Assured died May 20, 1909, and due proofs of death were prepared and tendered, but defendant, disclaiming liability, for the reasons hereinafter stated, declines to receive them.

The policy in evidence, the original of which is annexed to plaintiff's declaration, contained (inter alia) the following provisions:

### PRIVILEGES.

### CASH LOANS.

(Here follows provision for loans to be based upon the table which is appended.)

### *"Paid-up Life Policy or Extended Insurance.*

"If this Policy, after being in force full three years, shall lapse or become forfeited for the nonpayment of any premium or any note given for a premium or loan made in cash on such Policy as security, or of any interest on such note or loan, it may be surrendered for a nonparticipating Paid-up Life Policy as specified in the following table; provided the policy is legally surrendered to the Company within three months after such lapse or forfeiture. If this Policy having lapsed or become forfeited as above, is not surrendered for a Paid-up Life Policy, the Company will write, in lieu of this Policy, and without any action on the part of the Insured, a nonparticipating Paid-up Term Policy, for the full amount insured by this Policy and to continue in force for the term indicated by the following table of Extended Insurance. The Paid-up Term Policy shall provide, however, that in case of the death of the insured within three years from the date of such lapse or forfeiture, there

shall be deducted from the amount payable by the Company the sum of all premiums that would have become due on this Policy, up to the time of the death of the insured if the Policy had continued in force, and any indebtedness due the Company on this Policy at the date of such lapse or forfeiture.

### *"Table Above Referred To.*

"The benefits stated in the following table apply to the original sum insured only.  If the sum insured is increased by dividends or otherwise, the benefits will be increased, but any indebtedness placed on the Policy will operate to reduce the benefits.

| At End of | Cash Loan | Paid-up Policy | Life | Extended Ins. | Cash Surrender Value |
|---|---|---|---|---|---|
| 3 years | $ 57 | $142 | 3 years | 86 days | $42 |
| 4 years | 84 | 187 | 4 years | 100 days | 57 |
| 5 years | 107 | 232 | 5 years | 78 days | 84 |

Assured paid no premiums after January 27, 1904. His quarterly premium for April 27, 1904, became due, and remaining unpaid, the policy not being surrendered, the foregoing provision as to automatic extension of insurance became effective, and, so far as the face of the policy is concerned, assured became entitled to the protection of the policy for five years and seventy-eight days thereafter, or, to a period beyond the date of his death (May 20, 1909).

But, defendant contends, that, by reason of the fact that on April 27, 1904, the assured was indebted to the company for loans advanced him on the policy, aggregating, less dividends, the sum of $86.27, the period of extended insurance was, "by actuarial computation," reduced to 308 days, and terminated March 1, 1905, or almost four years before the date of death.

The basis of this defense is thus stated in the affidavit of defense, and is an excellent resume of the proposition :

"By actuarial computation the said Joseph M. Francis, on the 27th day of April, 1904, became entitled to extended insurance under the terms of said policy for a period of 308 days......or until March 1, 1905, that being the term of extended insurance allowed under said policy by actuarial computation of the amount of the surrender value of the said policy, at the date of its lapse, and the debt and accumulated interest, that being the amount of extended insurance that could be purchased by the legal reserve for the policy."

Another defense is, that demand having been made by letter for repayment of the loan, the payment not having been made, the policy became forfeited and void under the following provisions in the loan certificate signed by assured when he became a borrower:

"That if the said loan with the accumulated interest shall become equal to the legal reserve for the said policy, the Company may demand immediate payment of said loan, or any part thereof, with all interest accumulated and accrued thereon, and if the same be not paid to the Company within 30 days after due notice by mail, or otherwise, the said policy shall become forfeited and void."

It is contended by defendant that this language is also to be read into the terms of the policy as to extended insurance, and the latter to be interpreted by the foregoing expressions as to the period "when said loan, with accumulated interest shall become equal to the legal reserve for said policy."

It was strenuously contended at the trial, and as strenuously now urged here that the only rational interpretation of the clauses referred to is to the effect that it was the purpose and intention of the parties that only such amount of extended insurance should be allowed as the legal reserve would purchase—and that the five year and 78-day period, specified in the table, must be disregarded accordingly.

The court refused to allow the testimony of the actu-

ary of the company as to the method of computation, and the result thus obtained, in contradiction to the written language of the parties, to reduce the period of extended insurance to the point required by defendant's theory, and held that no part of the language of the policy or of the loan certificate was susceptible of such interpretation.

The defense was accordingly limited to the question of the receipt, or nonreceipt, by assured of the letter notifying him of the demand for repayment of the loans, in default of which the policy would be forfeited.

The jury found a verdict for plaintiff, allowing defendant credit for the amount of the loans, with interest, that being in accordance with the court's interpretation of the contract as to reduction of benefits by reason of indebtedness.

Defendant moved for a new trial, and for judgment non obstante veredicto.

We are now to consider these motions.

It may be that the method proposed by the company to determine the value of extended insurance is an equitable one, and that it will be well, in future, to so write its policies as to provide for it; but we cannot read into a contract an elaborate system of scientific actuarial computations unless it be so "nominated in the bond." No such contract can be found. Under the head-line, "Paid-up Life Policy or Extended Insurance," the only limitation upon the right of the assured to have a policy "to continue in force for the term indicated by the following Table of Extended Insurance" is, that, in the event of any existing indebtedness, it shall be deducted before the payment of the amount of the policy.

The clause following the line, "Table Above Referred To," which reads, "if the sum insured be increased by dividends or otherwise, the benefits will be increased, but any indebtedness placed on the policy will operate to reduce the benefits," must be read in connection with the

language quoted above, which applies to payment of debts at time of any policy falling due; and such deduction, by which the amount of the payment or "benefit" is reduced, is the logical and natural result of tne use of the terms.

In the first place, the policy expressly and emphatically says that such extended insurance will be issued to continue in force for the term indicated, i. e., five years and seventy-eight days—not for such fractional part of five years and seventy-eight days as computation by actuary might show the reserve fund value, set apart for this particular policy, would purchase.

Can the phrase, "reduction of benefits" be read to mean that the parties must submit the question of the extended term to an actuary and delve into the financial policy and accounting system of defendant before it can be known to what extended insurance the assured shall be entitled—notwithstanding the printed language carefully chosen by the company itself?

The language of the loan certificates, instead of supporting the defendant's contention, is, if anything, a complete answer to its position. It is said that the terms of these documents must be read into the policy. So they must, to determine the rights of the parties as to loans and the penalties for noncompliance with the terms of these loans—but not to affect the portions of the policy not otherwise involved. Thus, the language that "if the loan with accumulated interest shall become equal to the legal reserve for said policy, the company may demand immediate payment," surely cannot mean that the applicant thereby agrees that the previous positive period fixed as that of extended insurance, shall by such a collateral agreement, be entirely changed, and a new system agreed upon to determine his rights as to such extended insurance. True, this provision may be the beginning of a process of entirely terminating all of the rights of the assured, but it is not the beginning of a new contract to thereafter govern the policy and the

parties—save as a measure in terrorem. It provides a penalty, is in itself a complete remedy in case of default—but that very fact, and the careful preparation of such means of action, outside the terms of the policy, clearly indicate the purpose that it shall have no further effect.

If there be an ambiguity in the terms of this policy, it must be construed most favorably to the beneficiary, the language of Smith v. Life Insurance Co., 103 Pa. 177, being:

"A condition in a policy of insurance, being in the language of the company, must, if there be any ambiguity in it, be taken most strongly against it; if reasonably susceptible of two interpretations, it is to be construed in favor of the assured, so as not to defeat, without plain necessity, his claim to indemnity which it was his object to secure."

We have not overlooked the able brief of defendant's counsel. We are not convinced, however, by any of the authorities of other jurisdictions, that we have committed error. Taylor v. N. Y. Life Ins. Co., 197 N. Y. 324, and Perry v. Prudential Ins. Co., 129 N. Y. Supp. 751, are clearly distinguishable from the case before us.

In the Taylor case, a note was given, and this, in connection with the Insurance Law of the State of New York, was read into the policy. In the Perry case, there was a specific agreement in the loan certificate that the amount of the loan should operate to reduce the term of extended insurance......in accordance with the rules of the company."

In the case at bar, so far from embodying any such provsions, there is no reference whatever to the rules of the company as to computing extended insurance, and only a clause already quoted and considered, authorizing forfeiture if, when the loan and accumulated interest shall become equal to the legal reserve, the assured fails to pay up at once, on demand.

As to the second branch of the defense, the question

of whether the notice of demand which would warrant the forfeiture under the fifth clause of the loan certificate, was received by defendant, was fully and fairly submitted to the jury. It was a question of fact. The credibility of the witnesses and the inferences to be drawn from facts were for them. It is not every close case that is to be ruled by the court as against the determination of the jury. There must have been no evidence, or in any event, not more than a scintilla, to warrant the court in interfering. We cannot say that such was the fact here. Forfeitures are not favorites of the law. This notice was intended to work a forfeiture. If it reached its destination and was delivered, plaintiff's rights were at an end. The jury found it did not reach the assured, and he therefore had no notice of forfeiture. We cannot interfere.

The motion for new trial is refused, and the rule for judgment non obstante veredicto must be discharged.

*Errors assigned* were answers to points, various instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*John H. Scott,* with him *James T. MacDonald,* and *Paul M. Sloan,* for appellant.

*E. W. Arthur,* with him *W. S. Thomas,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 5, 1914:

Learned counsel for appellant contend that by the plain and unambiguous terms of the policy in suit, the indebtedness to the company at the time of lapse, operated to reduce the term of extended insurance; and fifty pages of printed argument are devoted to a discussion of those provisions which are said to be so clear and unambiguous. If the construction insisted upon by appellant were so clear as its counsel seem to think, it would

not be necessary to resort to such a labored argument to justify the conclusion. We have carefully read this argument without being convinced that the indebtedness to the company at the time of the lapse, operated to reduce the term of extended insurance, or that the plain and unambiguous terms of the policy mean anything of the kind. The controversy arises under the following clause of the policy: "If this Policy, having lapsed or become forfeited as above, is not surrendered for a Paid-up Policy, the Company will write in lieu of this policy, and without any action on the part of the Insured a nonparticipating Paid-up Term Policy for the full amount insured by this policy, and to continue in force for the term indicated by the following table of Extended Insurance." The table referred to shows that at the end of five years, the premiums having been paid during that period and the policy remaining in force at that time, the insured is entitled to extended insurance under the policy for an additional term of five years and seventy-eight days. This all appears in the plain and unequivocal terms of the policy itself. What is meant by the policy in this respect is not left to conjecture, or for subsequent interpretation, but is clearly expressed in the plainest kind of language so that he who runs may read and know. Indeed, if it were not for the very able and ingenious argument of learned counsel for appellant, we would think it impossible to give a substantial reason for holding that the policy does not mean what its language so clearly expresses. It is argued, earnestly and forcefully, that the insured was only entitled to an extended term of five years and seventy-eight days on condition of his being free from indebtedness to the company on account of the policy at the date of the lapse. The answer to this contention is that the policy contains no such provision, and in order to reach such a conclusion it is necessary, not only to ignore the plain words of the contract, but to read into it by way of construction, the ex parte understanding of the insurer

without anything in the policy to indicate what that understanding was and without notice to the insured that the true intent of the parties was not fully expressed in the clear language of their contract. If the plain and unambiguous terms of the contract in the present case mean anything, it is, as held by the learned court below, that the insured was entitled to an extended term of five years and seventy-eight days. This is what is expressly provided in the table of extended insurance, and we can find no warrant for denying the insured and his beneficiaries the full benefits of his policy. It has been uniformly held in our State that if there be ambiguity in the conditions of a policy of insurance, those conditions are to be taken most strongly against the insurer and in favor of the insured: Smith v. Life Insurance Co., 103 Pa. 177. The application of this well established rule to the facts of the present case is a sufficient answer to the argument of appellant as to the proper construction of the policy in question here.

We cannot agree that the term of extended insurance is affected by the loan provisions of the policy, which do not in terms, nor as we view it by necessary implication, have reference to the table of extended insurance. If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy, and the inference from its failure to do so is that it did not so intend. The policy is in the language of the insurance company and the presumption is that its express provisions contain all the conditions intended to be imposed. Certainly the insured had the right to assume that the policy meant what it said, and that conditions not expressed did not exist. As to the loans appellant safeguarded its interests by provisions for forfeiture and for the deduction of indebtedness, together with interest accumulated and accrued upon payment of the amount otherwise due the insured under the terms of the policy. There is no provision in the policy for the

reduction of the term of extended insurance on account of indebtedness to the insurer, and in the absence of such a provision, courts are not at liberty to read into the contract what it does not contain. Again, the rule that insurance contracts shall be taken most strongly against the insurer applies, and when the provisions as to loans are read in the light of this rule the argument of appellant on this branch of the case fails.

The second contention of appellant is that the learned court below erred in submitting to the jury the question of fact as to whether notice of forfeiture was received by the insured. It is not denied that this under proper circumstances was a question of fact for the jury, but it is argued that the evidence was not sufficient to overcome the presumption that a letter properly addressed and deposited in the mail was received by the addressee. The notice contained in the letter was intended to work a forfeiture, and if it reached its destination and was delivered it would have this effect. It was denied that the notice was ever received and this was the question submitted to the jury. It is contended for appellant that the evidence to show that no such notice was received amounted only to a scintilla and that the court should have disregarded it by directing a verdict for the defendant. The evidence cannot be regarded as amounting only to a scintilla, and under all the circumstances, we feel that the case is not so clear on its facts as to warrant its withdrawal from the jury. It may be considered a close case, and therefore doubtful on this particular branch of it, but cases doubtful on their facts, or the inferences to be drawn therefrom, are as a rule for the jury and not for the court. Our conclusion is that the submission of this question of fact to the jury does not constitute reversible error.

The case was very carefully tried in the court below and was submitted to the jury with fair and impartial instructions on the disputed question of fact. We entirely agree with the views expressed by the learned trial

judge as to the construction of the contract of insurance. The case might very well be rested on the opinion of the learned court below in refusing the motion for judgment non obstante veredicto. The opinion covers every branch of the case and shows careful and exhaustive consideration of the questions involved. The conclusion reached is so clearly right as to make further discussion unnecessary.

Judgment affirmed.