SHORES, Justice.
The following facts were stipulated:
On September 24, 1970, Allstate issued a policy of life insurance insuring the life of Roy Lee Arthur Stephens. Ann Smith Stephens, wife of the insured, was named beneficiary. The policy had a face amount of $10,000, and the monthly premium was $17.40.
An initial payment of $34.80 was made by the insured at the time the application for the policy was completed. Thereafter the insured paid his premiums through the “check plan,” Allstate sending a draft to his bank on the first of each month beginning November 1, 1970, through November 1, 1973. All of these drafts were honored. Drafts for December, 1973, and January, 1974, were not honored by the bank. No premiums after November 1, 1973, were received by Allstate.
In November, 1973, the insured obtained a loan on the policy in the amount of $132.90. This loan was never repaid. The insured died August 7, 1974.
The beneficiary, Mrs. Stephens, brought suit on the policy following the death of the insured. The trial court found in favor of the beneficiary and Allstate appealed.
The single issue involved is whether the policy provided for extended term insurance upon lapse; and, if it did, whether the fact that there was no cash value at the time of the lapse affected this option, the cash value having been borrowed by the insured under the loan provisions of the policy.
In the body of the policy, the following appears:
“OPTIONS ON LAPSE
“If any premium due while this Policy has a cash value is not paid by the end of the grace period by automatic premium loan or otherwise, Option B shall be immediately effective as described below. However, Option A may be elected, in place of B, within 60 days after the due date of the premium first in default.
“A. Surrender for Cash — To surrender this Policy for its cash value less any indebtedness.
“B. Reduced Paid-up Life Insurance —To continue this Policy as paid-up life insurance for a reduced amount. The amount shall be such as the cash value less any indebtedness to the Company shall provide when applied as a net single premium.”
Extended term insurance is not mentioned in the body of the policy as one of the options available on lapse. However, the policy contains a page headed “TABLES OF NONFORFEITURE VALUES FOR EACH $1000 OF INSURANCE.” The values listed on that page are:
"Cash or Reduced Extended Term
Loan Paid up Insurance for
Value Insurance Years Days"
The insured was 31 years of age when the policy was issued. Under the column headed “Extended Term Insurance .” on the page of tables, the table shows that at age 31, the insured would have been entitled to 3 years and 201 days of extended term insurance on the date of the lapse. The trial court noted in its judgment that the only place in the policy where extended term insurance is mentioned is in these tables. It concluded that *779 those tables must be given some force and effect. It was the trial court’s judgment that if no extended term insurance was intended to be provided, it should not have been listed in the tables. We agree. It has been said too often to require repeating that the insurer writes the policies, and when ambiguity results, such ambiguity must be resolved against the insurer. Here, there is an obvious ambiguity between the options offered in the body of the policy and the tables of nonforfeiture values. We agree with the trial court that if the company did not intend to offer extended term insurance as one of the options available to the insured upon lapse, then it should not have included any reference to this option in the tables included in the policy it issued to the insured.
However, we cannot agree with the trial court’s conclusion that “. . . At no place in the policy does it provide that indebtedness of insured to insurer shall in any way affect the duration of extended term insurance . .
It is true that the only place in the policy that extended term insurance is mentioned is in the tables of nonforfeiture values. That is sufficient, as the trial court determined, to conclude that that option was intended to be offered. However, on the same page, the only page having any reference to extended term insurance as an option, the following appears:
“The values for this Policy are in the Table below headed by the ‘Age at Issue’ corresponding to the age at which this Policy is issued and which appears on Page 1. The values apply on the policy anniversary indicated, assuming that all premiums up to such anniversary have been paid and that there is no indebtedness. Durations of Extended Term Insurance are the same regardless of amount.” (Emphasis Supplied)
We must read every provision of the policy; and, if the option offered is conditioned in any specific way, then we must give effect to any condition clearly provided in the policy.
There are two options contained in the body of the policy-—Surrender for Cash and Reduced Paid Up Life Insurance —and both provide that such options are to be determined “less any indebtedness to the company.” Extended term insurance is offered as an option only in ■ the tables of nonforfeiture values. That page clearly contains a similar condition, less any indebtedness due the company. While the language on the tables is slightly different, i. e., “assuming that all premiums up to such anniversary have been paid and that there is no indebtedness,” the meaning is the same. At the least, the phrase “assuming . . . that there is no indebtedness” appearing on the page of tables, it is sufficiently clear to indicate that the company was offering extended term insurance for the number of years and days set out in the tables on the anniversary date, to the extent that there was a cash or loan value on the date that the policy lapsed in excess of any indebtedness owed the company.
Under the facts as stipulated in this case, premiums for December, 1973, and January 1974, were not paid. The last premium was paid in November, 1973. All of the cash value was borrowed by the insured in November, 1973. There was no cash value at the time the policy lapsed.
Alabama Nat. Life Insurance Company v. Smith, 214 Ala. 585, 108 So. 524 (1926), involved a policy which provided that “ ‘If any premium shall not be paid on or before the date when due, and if there be no indebtedness to the company . the insurance will either continue from said due date as term insurance for the original amount, during the term including the period of grace specified in column (3) of the accompanying table .’” (Emphasis Supplied) (214 Ala. at 585, 586, 108 So. at 524). The insured under that policy borrowed the cash or *780 loan value of the policy one month after paying the annual premium for the third year. The premium for the fourth year was not paid. This court, speaking through Justice Bouldin, held that, there being no loan value at the end of the third year, there was nothing that could be used as a premium to extend the policy, noting:
“True, the contract must be construed favorably to the insured, and if the insurer has so written it as to reasonably import a liability, he should be held to it. The nonforfeiture clause does, in its opening words, indicate a loan value after 'premiums have been paid for two or more years’; but the same clause limits its extended insurance provisions to the loan values, not there given, but expressly fixed in other clauses of the contract. . . .” (214 Ala. at 586, 108 So. at 525)
In the present case, the only reference to extended term insurance is found on the page containing the tables of values. That same page provides that such value is available assuming there is no indebtedness to the company. We cannot say that one provision on this page extends to the insured without the other.
The trial court found Francis v. Prudential Ins. Co., 243 Pa. 380, 90 A. 205 (1914), persuasive. The policy in that case contained a specific provision affording extended term insurance, but it contained no provision about loans operating to reduce the term of extended term insurance. There, the court said:
"... We have carefully read this argument without being convinced that the indebtedness to the company at the time of the lapse operated to reduce the term of extended insurance, or that the plain and unambiguous terms of the policy mean anything of the kind. . The answer to this contention is that the policy contains no such provision ...” (243 Pa. at 389, 90 A. at 208)
The policy in the case before us does contain such a provision, and is on the same page which offers the only reference to extended term insurance. We are compelled to give some meaning to this provision.
REVERSED AND REMANDED.
HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.