## DeMann v. Association Underwriters of America, Inc.

*Libro G. Taglianetti, Jr.*, for plaintiff.
*Lee A. Rosengard* and *William H. Bradbury, III*, for defendants.

BROWN, *J.*, November 5, 1979—This is an action by plaintiff, Joseph G. DeMann, against two insurance companies, Continental Casualty Company (Continental) and Minnesota Mutual Life Insurance Company (Minnesota) and the agent of both, Association Underwriters of America, Inc. (Association), arising out of two policies of insurance written by the companies; a term life policy underwritten by Minnesota and a disability income policy issued by Continental. The complaint is in assumpsit, trespass and equity against all defendants, but upon demurrer by defendants at the close of plaintiff's case, the counts in assumpsit and trespass were dismissed as to Minnesota and trespass and equity dismissed as to Continental.

Plaintiff seeks an order compelling Association and Minnesota to reinstate the life policy and an award in damages versus Continental and Association for two years of disability payments at $400 a month.

## FINDINGS OF FACT

1. Plaintiff is an individual residing at 666 Valerie Road, Newtown Square, Pa.

2. Defendant, Association, is a business corporation with a place of business in Fort Washington, Pennsylvania and was the agent of both Continental and Minnesota during the transactions here in question. Association designed and administered a disability income plan and a life insurance plan for the Philadelphia Section of the American Chemical Society.

3. Defendant, Minnesota, is a business corporation organized and existing under the laws of the State of Minnesota.

4. Defendant, Continental, is a business corporation organized and existing under the laws of the State of Illinois.

5. Plaintiff, as a member of the Philadelphia Section of the American Chemical Society, purchased a contract of life insurance from Minnesota through Association. That policy was issued on April 1, 1964, and carries the number 4629-W-0276-1. Premium payments were due January 1 and July 1 of each year.

6. Plaintiff in the same capacity purchased a disability income policy from Continental through Association on January 1, 1971. The number of that policy is 1-A-0207. Premium payments were due January 1 and July 1 of each year. Benefits for total disability due to sickness were payable after 90 days at the rate of $400 per month for a maximum of 24 months.

7. On the applications for insurance forms supplied by Association, a prospective insured was asked to check a block if he wished to be billed and if not, to enclose a check payable to Association in the amount of the premium. Plaintiff checked the "bill me" block.

8. Semi-annually thereafter notices of premiums due were sent to plaintiff by Association 15 days before the due date of January 1 and July 1. Upon receipt of the notices, plaintiff paid the premiums due; in the case of the Minnesota policy, from July 1, 1964 through July 1, 1972, and on the Continental policy, from January 1, 1971 through July 1, 1972.

9. In July, 1971, plaintiff moved from 1224 Belfield Road in Drexel Hill to his present address in Newtown Square. He mailed a notice of change of address to Association on a form supplied by the post office about the time of such move.

10. The notices of premiums due January 1, 1972, were mailed to plaintiff's old address but were forwarded to him. He paid the premiums within the alloted time and inserted in the envelopes with his checks and the notices a 3 x 5 card advising of his new address. He also wrote his new address on the outside of the envelopes when paying the premiums.

11. The notices of premiums due July 1, 1972, were also sent to the old address. After receiving the forwarded notices, he repeated the notice of change of address procedure of the previous January.

12. Plaintiff also telephoned Association after receipt of the wrongly addressed premium notices in July, 1972 and gave his correct address to a woman who answered his call.

13. Despite such change of address notices, Association failed to correct the address and again sent notices to the Drexel Hill address for the premiums due January 1, 1973. These notices were not forwarded, nor were three sets of follow-up notices. The premiums were not paid.

14. On April 7, 1973, plaintiff had a massive heart attack. Later in April, plaintiff's wife notified Association of the heart attack and gave notice of a claim under the disability policy. She was advised that both policies had lapsed for nonpayment of premium.

Thereafter on April 27, 1973, she sent a check to Association in the amount of the premiums due on both policies the previous January. This check was negotiated by Association.

15. After some exchange of correspondence and telephone calls, plaintiff was advised that he was required to file for reinstatement of both policies. As to the life policy he was required to submit to a medical examination and was told that the disabil-

ity income policy would be reinstated, if at all, only with the exclusion of the time period which included the heart attack. Since he could not pass the medical examination and the reinstatement of the disability income policy with such an exclusion was of no use to him, he declined to complete the applications for reinstatement. Following that, the premium moneys sent by his wife on April 27 were returned by Association in separate checks in July and August, 1973. These checks were never negotiated by plaintiff.

16. The life policy contains a waiver of premium during the period that insured is totally and permanently disabled provided the disability occurred before the renewal date nearest to the insured's 60th birthday. Plaintiff was 60 years of age on September 13, 1973, and the renewal date nearest that date was July 1, 1973.

17. Plaintiff is now and has been since April 7, 1973, totally disabled within the meaning of the disability income policy and the waiver of premium provision of the life policy.

18. Plaintiff is uninsurable by reason of the present condition of his health.

19. Plaintiff's complaint claims attorneys' fees and damages for humiliation and financial distress but presented no evidence or any authority to support either claim.

## DISCUSSION

Pennsylvania, unlike the majority of American jurisdictions, has no statutory requirement that an insurer give notice of premiums due: Act of May 17, 1921, P.L. 682, as amended, 40 P.S. §§510, 532.6 and 753; 63 A.L.R. 2d 570-587. Defendants rely on the absence of this statutory provision to support

their argument that the burden of nonpayment lies with plaintiff when no notice is sent: Smith v. National Life Insurance Company, 103 Pa. 177, 185 (1883). However, Smith is distinguishable. The insured there failed to make semi-annual payments for a period of two years. He allowed four payment periods to pass without payment. The trial court's judgment for defendant insurer was affirmed on appeal in an opinion which nevertheless recognized that conduct of the insurer which might mislead would call for a different result: "Assuming, however, that the assured may have been misled by the company's course of business, there can be no apology or excuse for two whole years' neglect upon that ground; such a default could not be traced to the misleading effect of the company's uniform practice in sending notices."

Here the delay was not two years and four payments missed, but less than four months and one payment missed. In Smith, the passage of time alone gave the lie to the insured's claim that the company's custom of sending notices lowered his guard. On the other hand, the short time here between the premium due date and the loss, particularly after prompt payment of premiums (in the case of the life policy for eight years), suggests an inadvertent oversight. It is reasonable to assign as the prime cause for such oversight, the failure to give notice after years of doing so; whereas in Smith, time alone suggests there was some reason for nonpayment other than one for which the insurer was responsible. In the absence of evidence that plaintiff's failure to pay was prompted by an abandonment of the policies, we can and do accept his claim that he relied on notice and failing to receive it, overlooked the due date. It is not reasonable to assume that given his age and station in life

he would purposely ignore the premium notices if he had in fact received them. In Helme v. Philadephia Life Insurance, 61 Pa. 107, 110 (1869), a case more hoary even than Smith, but cited with approval in Cleveland v. Salwen, 292 Pa. 427, 141 Atl. 155 (1928), the court said:

"If it was the practice of the company to notify the plaintiff of the times her premiums were due and payable, and omitted on the occasion of the default; or if they so dealt with her as to induce a belief that the clause of forfeiture would not be insisted on in her case, in case of a dereliction of payment at the day, . . . and thus put her off her guard, they ought not to be permitted to take advantage of a default which they may themselves have encouraged."

A modern case relied on by defendants is Schifalacqua v. CNA, 567 F. 2d 1255 (3d Cir. 1977). But that case is inapposite since there was no issue of failure of the insured to notify involved. Plaintiff had not moved and he did receive the notice of premium due. His failure to pay was entirely his doing.

A case in keeping with present day thinking which is apposite on its facts and close temporally and geographically, is Carfagnini v. Service Life Insurance Co. of Omaha, 113 N.J. Super. 469, 472, 274 A. 2d 303 (1971).

"The company's contention . . . that it had no duty to forward premium notices to the insured, ignores the very interest an insurance company seeks to serve . . . Accordingly, when an insurer establishes a practice of giving notice of premiums due so as to lead the insured to believe that such notice will be given regularly, the insurer cannot declare a forfeiture for nonpayment of premium if such nonpayment is attributable to the insurer's

failure to provide the notice. The majority rule is that an insurer's custom of giving regular notices of the time for payment of premiums constitutes a waiver or estoppel on the insurer. See 14 Appleman, Insurance Law & Practice §8199. We deem that view to be sound. Any expressions to the contrary . . . are not in line with the salutary modern views of the obligations of insurance companies to their assureds and are disapproved."

New Jersey like Pennsylvania fixes no obligation on an insurer to give notice of premiums due: 17 N.J.S.A. 34-15 and 38-13.2.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction.

2. Defendants, Association and Continental, breached the contract of insurance with plaintiff and are liable in damages to plaintiff, Joseph G. DeMann, at the rate of $400 a month beginning July 7, 1973 and continuing for 24 months, or $9,600, plus interest at six percent on each payment beginning 30 days following its due date. The total of such interest is $3,048; so the total through November 7, 1979 of principal and interest is $12,648.

3. The contract of life insurance issued by Minnesota to plaintiff was breached when cancelled by defendants, Association and Minnesota in 1973.

4. Plaintiff has no adequate remedy at law by reason of his insurability.

5. The disability of waiver of premium clause of the life policy is applicable and accordingly, no premium is due by plaintiff from July 1, 1973 to date.

6. Plaintiff is liable to Continental and Minnesota for the premiums due on the policies for the period January 1, 1973 to July 1, 1973.

7. Plaintiff is not entitled to any award for counsel fees or damages for humiliation or financial distress caused by defendants' breach of contract.

## DECREE NISI

And now, November 5, 1979, the sum of $12,648 is awarded to plaintiff, Joseph G. DeMann, against defendants, Association Underwriters of America, Inc. and Continental Casualty Company. Defendants, Association Underwriters of America, Inc. and Minnesota Mutual Life Insurance Company are directed to reinstate the policy No. 4629-W-0276-1 without further payment of premium by plaintiff so long as his disability within the language of the waiver of premium clause continues. Both the award of damages and the reinstatement are conditioned on payment by plaintiff to Association Underwriters of America, Inc. of the premiums due for the period January 1, 1973 to July 1, 1973.

This decree nisi becomes the final decree of the court unless exceptions are filed within ten days of this date.