McCoy *v.* Fleisher Industrial Center, Inc.,
Appellant.

Argued November 21, 1946. Before BALDRIGE, P. J.,
RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*J. Webster Jones,* for appellant.

*John Francis Williams,* for appellee.

OPINION BY DITHRICH, J., January 17, 1947:

The jury found for plaintiff in this action of trespass to recover damages for personal injuries sustained when he fell on the business premises of defendant. Defendant has appealed from the refusal of its motions for judgment n. o. v. and for a new trial.

The facts viewed in the light most advantageous to plaintiff, as they are required to be viewed in considering the motion for judgment n. o. v. (*Lucacher v. Kerson et al.*, 158 Pa. Superior Ct. 437, 45 A. 2d 245), are as stated in the opinion of the lower court.

"Plaintiff was employed by a trucking concern to pick up and deliver goods for its clients. On January 25, 1944, he drove his truck to the Fleisher Industrial Center building in Philadelphia for the purpose of delivering some 'cut goods' to the Fulton Clothes Company, one of the tenants of the building. . . .

"The Fleisher Industrial Center building occupies an entire city block bounded by 25th Street on the east, 26th Street on the west, Reed Street on the north and Dickinson Street on the south. The Fulton Clothes Company occupied a roughly rectangular portion of the first floor, fronting on Reed Street, measuring 180 feet at its greatest length, 65 feet at its greatest width. It had the middle section of that floor, which did not extend completely to either 25th Street or 26th Street. This section was 95 feet from the 25th Street end of the building, and 100 feet from the 26th Street end of the building, at the nearest points. There is a 20-foot wide east-west hallway directly south of the space occupied by the Fulton Clothes Company, extending from the west line of that company's area to a point about 40 feet short of the east line of that company's area. At that point, this hallway abuts upon an elevator which, according to the floor plan introduced in evidence, appears to be approximately 10 feet wide. On the other (east) side of the elevator there is a continuation of the hallway, but

at a width of only 15 feet. This hallway runs along the last 15 feet of the Fulton Company's area, and continues eastward beyond it. At the east end of this narrower hallway is a lavatory used by the Fulton Company's employees and patrons.

"The Fulton Company area has a doorway at each side of the elevator, opening into these hallways. Immediately outside the building, adjacent to the hallways and on a level with them, are two platforms. The longer of the two platforms extends the full length of the larger hallway; the shorter platform begins twenty feet from the east end of the longer platform and extends eastward (toward 25th Street) for a distance of about 40 feet, or about half the length of the narrower hallway. At the west end of each platform is a short flight of steps leading from the platform to the ground. . . . The steps from the short platform are arranged against the wall, in line with the platform, and lead down towards the east end of the long platform. . . .

"There is a driveway along these platforms leading in from 25th Street. It is used by vehicles in making deliveries to the tenants of the building.

"Plaintiff testified that he drove his truck to the loading platform of the Fulton Clothes Company, which he had used before; that is, the long platform. He then jumped from the cab of his truck to the platform and walked into the building through the doorway at the west side of the elevator to report to the Fulton Clothes Company that he was ready to deliver the goods. They told him to get ready, and that two men would come out to assist him in unloading his truck. He asked permission to use a lavatory and was directed to the one at the east end of the small hallway. He proceeded to the lavatory, and, returning from there, left the building through the doorway at the side of the elevator nearest to him, the one at the east side of the elevator. It opened onto the west end of the small platform and was open at

the time. This was not the same door through which plaintiff had entered the building originally. It was on the other side of the elevator and he used it on this occasion because he had to go out to assist in the unloading, and, in returning from the lavatory, 'the rear of my truck was nearer to me if I went out them steps.'

"The diagram offered in evidence, supplemented by the testimony, clearly shows that the steps plaintiff attempted to use did lead to the rear of his truck, and that the other steps, leading to the ground from the long platform, were approximately 160 feet further to the west and that, had plaintiff used them, he would have had to walk that 160 feet and also to walk back to his truck and past it to its rear. He was therefore using the most direct means of reaching his objective.

"There were no signs prohibiting ingress to or egress from the Fulton Clothes Company premises in this manner. . . . Plaintiff walked onto the platform in the most direct route to his truck and proceeded to descend the steps by placing his left foot on the first step below the level of the platform. When he placed his right foot on the second step it gave way, causing him to fall, with the result that he sustained the injuries here complained of."

Appellant, while admitting that plaintiff was a business visitor, to whom it owed the duty of maintaining its premises in a reasonably safe condition, when he entered the premises, contends that he lost that status and became a bare licensee, to whom it owed no higher duty than to disclose known defects, when returning from the lavatory. This contention appears in its statement of the first question involved: "(1) If a business visitor goes to a lavatory and returns through a part of the premises not held open to him is he not a bare licensee, to whom the owner owes no duty to prepare or inspect the premises to discover possible or probable danger?" The clearest and the most direct and pertinent

answer to that question that we have been able to discover is the opinion by HIRT, J., in *Christman et al. v. Segal,* 143 Pa. Superior Ct. 87, 17 A. 2d 676. There plaintiff, after making a purchase in a department store, upon inquiry was directed to a toilet. In going to the toilet, due to a negligent act on the part of one of defendant's employees, she fell down a flight of steps and was injured. We there held, pages 90 and 91:

"In seeking toilet facilities plaintiff was still an invitee [business visitor] and defendant continued to owe her the duty of reasonable care. . . . She was not informed, if it be the fact as defendant testified, that the toilet room in this store was maintained for the accommodation of employees only and not for patrons of the store. But even if the use was permissive merely, that fact did not affect plaintiff's status as an invitee [business visitor]."

Here it was testified by the assistant to the superintendent of the building that the lavatory was ". . . as much open to . . . employees of concerns doing business with the Fulton Clothes Company as . . . to Fulton employees."

Appellant has assigned several reasons in support of its motion for a new trial, but only two merit comment or discussion. That part of the charge where the court said, "They [defendants] have no right to close their eyes to things they could have seen had they reasonably looked after their building," and to which appellant took exception, standing alone may be objectionable, but when considered in its context does not constitute ground for reversal.

Appellant takes umbrage to the use by the trial court of the words "We will please the defendant's counsel . . ." in sending out a certain exhibit to the jury room. In that connection, we quote from the opinion of the learned court below: "In the course of the trial, it was apparent that defendant's counsel assumed

that the trial judge would send out with the jury the written statement which had been prepared by the representative of the Workmen's Compensation Insurance Company and signed by plaintiff. As the trial judge was of the opinion that to send out that statement would over-emphasize its importance as contrasted with plaintiff's testimony in court, the trial judge, just prior to the noon recess, called counsel to side bar and informed him that, as the matter was one which lay entirely within the discretion of the trial judge, he would not send the statement out with the jury for the reason above stated. When the trial was concluded, the judge said to the jury, 'I am not sending out the statement . . ., it has been read at least twice to the jury and commented upon by counsel and by the Court, and it is not entitled to any greater emphasis as opposed to his (plaintiff's) testimony in court.' . . . The judge granted defendant an exception to that ruling.

"Counsel for defendant then insisted that the trial judge ask the jury if they desired to see the statement and to have it go out with them. The trial judge accordingly asked the jury whether or not they wanted the statement sent out with them, and said he would send it out if the jury expressed a wish to have it. The jury then conferred in the jury box and the foreman reported that the jury did not wish to have the statement sent out. Counsel for the defendant, with further undue insistence, then directly addressed the jury as follows: 'Is there *any* juror in the box who . . .' The trial judge interrupted to say that counsel had gone far enough, but counsel continued, 'Sir, that was the forelady's statement. I think I saw certain of the jurors say they would like to see it.' The forelady then reported, 'It was eight to four.' Counsel then persisted, 'That is right, sir. Now, if there is *any* juror in the box . . .', again addressing himself directly to the jury. At that point the trial judge, to put an end to such lack

of courtesy on the part of defendant's counsel in attempting to deprive the trial judge of the discretion which the law vests in him, said, 'We will please the defendant's counsel and so there will be no question, we will send the statement out.' "

We agree with the learned court below ". . . that it comes with ill grace for defendant's counsel to base an exception on the use of the word 'please' . . . By his insistence, counsel had maneuvered the matter to a point where the trial judge had to choose between two courses, both of which were prejudicial to the plaintiff,—either sending out the statement and thus overemphasizing it, or withholding it and thereby creating in the minds of the jury a suspicion that there was something mysterious in the statement, favorable to the defendant, which the court was attempting to withhold from them. *Such trial methods certainly should not be encouraged.*" (Italics supplied.)

Judgment affirmed.