## Varano v. Protection Mutual Fire Insurance Co. et al.

*S. L. Gribben*, for plaintiff.

*Carl Rice, F. A. Witmer* and *Robert M. Fortney*, for defendants.

PER CURIAM, November 10, 1947.—Plaintiffs instituted three actions in assumpsit against defendants on four policies of fire insurance for damages alleged to have been sustained by them by reason of the destruction of their dwelling house and personal property contained therein, by fire. These cases were tried together before the court and a jury and resulted in verdicts for plaintiffs, totalling $2,750, with interest. The cases are now before the court on defendants' motions for judgment n. o. v. on the whole record and for a new trial.

In their statements of claim and upon the trial of the cases, plaintiffs sought to establish that on March 6, 1942, the dwelling house and the contents thereof were totally destroyed by fire which did not occur from any cause excepted by the terms of the policies. Defendants, in their affidavits of defense and upon the trial of the cases, contended that there was an explosion on the premises which completely demolished the dwelling house and contents, and that, since the policies contained the provisions that defendants were not liable for loss or damage occurring by explosion, defendants were not liable under the policies.

Each of the policies issued by defendants undertook to insure plaintiffs against all direct loss and damage by fire, and each of the policies contained the provision that

"Unless otherwise provided by agreement in writing added hereto—this company shall not be liable for loss or damage occurring, . . . (g) by explosion or lightning, unless fire ensue, and in that event, for loss or damage by fire only."

In support of the motion for judgment n. o. v., defendants contend that plaintiffs had failed to establish by any testimony that there was a hostile fire prior to the explosion and that any loss which they sustained was incurred by reason of an explosion and not by fire. Defendants further contend that, following the explosion, the debris was then consumed by fire and that, if there was an ensuing fire, plaintiffs could not recover for any loss occasioned by such fire following the explosion for the reason that they failed to meet the burden placed upon them to differentiate between the loss occasioned by the explosion and any loss caused by the ensuing fire.

It is well settled that on a motion for judgment n. o. v., the testimony must be read in the light most favorable to plaintiffs, all conflicts resolved in their favor, and they must be given the benefit of every fact and inference of fact, which may reasonably be deduced from the evidence, including evidence produced upon both sides: Brown v. McNamara, 160 Pa. Superior Ct. 206; McCoy v. Fleisher Industrial Center, Inc., 160 Pa. Superior Ct. 236; Bockstock et ux v. Pittsburgh Rwys. Co., 159 Pa. Superior Ct. 237.

Plaintiffs were the owners of the western one half of a double frame dwelling house situate in the Borough of Kulpmont, which was occupied by them and their three children. The eastern one half of the dwelling house was occupied by Salvatore Cornetti and his family.

There was testimony that Cornetti was tried and convicted of arson, having been charged with the burning of the dwelling house in question in this case. The method used by him was not developed in the trial of this case, although, on direct examination of John Kovach, a witness for defendants, it was testified that he was sent to prison for the fire which occurred on March 6, 1942. On cross-examination of plaintiff, Catherine Varano, she testified that Cornetti was sent to the penitentiary for causing the destruction of the

building. She admitted that there was an explosion but did not know where it had come from at the time. All of the testimony, both for plaintiffs and defendants, conclusively shows that the attention of every witness was attracted to the building by an explosion which made a noise, and that when they came out of their homes or looked toward the building, there was fire present. There is no testimony which conclusively shows that there was an explosion and then fire, or that there was fire and then an explosion. There is some testimony, at least, that the explosion or fire occurred on the Cornetti side of the building. Plaintiff, Catherine Varano, who was across the street at the home of a neighbor at the time of the explosion, testified that she heard the explosion, went outside and saw fire in her home and that her house and furniture were all destroyed by fire.

The witness, Bernice Bressi, testified that she had returned from the movies with two of plaintiffs' children at about nine o'clock, and that the Varano children went on their front porch and that she went to her home which is located across the street from the Varano home, to determine whether Mrs. Varano was at the Bressi home; that when she learned that Mrs. Varano was in her home, she called the Varano children to come over, and that when she returned to her house, within a period of five minutes, she heard a noise, that she went outside and saw the Varano and Cornetti houses burning. The witness, on cross-examination, testified that the Varano house was down but was all afire and burning and she recalled seeing a charred Frigidaire the next morning.

Constance Varano, daughter of plaintiffs, testified that she had returned from the movies with Bernice Bressi and her sister at about nine o'clock, that she and her sister went to her home, opened the door and called for her mother and then heard Bernice call to them that her mother was at the Bressi home, and

that she and her sister had just gotten off the porch and were in the middle of the street when they heard a noise, and upon turning around, saw fire in the Cornetti house, that the house was not down but was burning. Constance Varano and Bernice Bressi testified that the front wall of the Varano home was thrown out into the street.

Joseph Veach, a witness for plaintiffs, testified that he visited the scene of the fire the following morning, that he saw part of the back porch and part of the roof hanging on some studdings on a wall, on the west side of what was the Varano house.

Defendants called several witnesses who testified that they had heard a noise, felt a concussion and that portions of the house blew up in the air and that when they came out of doors, the building was entirely down in a mass of flames. There was also testimony by the same witness to the effect that the Varano stove was in an adjoining yard and that they saw other articles of furniture flying in the air.

The evidence in this case indicates a loud explosion, fire and charred ruins, and under all of the circumstances we believe that the question as to whether or not there was a preceding hostile fire was properly submitted to the jury. The testimony of Constance Varano to the effect that she saw fire on the Cornetti side of the property and that the house was not down but was still standing, burning, would support the inference, favorable to plaintiffs, that, as far as the Varano property was concerned, the fire preceded the explosion.

Where a policy provides that the company shall not be liable for loss or damage unless a fire ensue, and in that event for loss or damage by fire only, the burden is upon the insured to prove that a hostile fire caused the explosion; but where the proof rests largely upon circumstantial evidence, the question is not whether the circumstances exclude every other hypothesis but

whether they fairly support the theory advanced by plaintiffs and exclude by their preponderating weight the theory advanced by defendants: Harbridge et ux. v. Mutual Fire Ins. Co., 151 Pa. Superior Ct. 278.

Even though there had been no hostile fire preceding the explosion, yet, under the terms of the policies, plaintiffs were entitled to recover for any loss occasioned by an ensuing fire. In instructing the jury the court very carefully pointed out that if they found that the building and household effects were totally destroyed by an explosion, it would be immaterial whether or not a fire ensued, and, further, that they would have to find whether the fire following the explosion caused the total destruction of plaintiffs' property or whether, from the evidence, the loss was caused by the explosion alone.

It is well settled that there can be no recovery for loss or damage occurring by explosion, unless fire ensues or a hostile fire preceded the explosion: Tannenbaum v. Fire Ins. Co., 127 Pa. Superior Ct. 278. Likewise, where fire ensues following an explosion, in the light of the decision of the Supreme Court in Warmcastle v. Scottish Union and National Ins. Co., 201 Pa. 302, the burden is upon plaintiff to differentiate between the two measures of damage.

Upon the trial of the case there was no attempt made to show what loss was caused by explosion, if any, or what loss was occasioned by the fire. The theory upon which plaintiffs' case was tried was to the effect that there was a total loss caused by fire, and the theory of the defense was that the dwelling and household contents were totally destroyed by an explosion which was not caused by any preëxisting hostile fire and that any fire which did ensue was simply caused by the burning of debris.

We are of the opinion that it was proper to submit to the jury the question as to whether the building and contents were destroyed by an explosion or whether

they were destroyed by fire. Constance Varano testified that, following the loud noise, and upon looking at the building, there was fire burning on the Cornetti side of the house and that the house was still standing. Other witnesses for plaintiffs testified that there was a mass of flames and that they did see the roof raise in the air and the front wall of the house fall. The witnesses for defendants testified that they saw lumber flying about and within a short time following the explosion saw the house down, in flames. It was proper to submit such testimony to the jury for them to determine the extent of loss, if any, by explosion, and the extent of the loss, if any, by the ensuing fire.

Complaint is made on the part of defendants that plaintiffs failed to meet the burden cast upon them to show the extent of the loss which was caused by explosion and that suffered by the ensuing fire, and it should not have been submitted to the jury. There was no attempt made on the part of plaintiffs to show a distinct loss by explosion and one by fire, the contention of plaintiffs being that the entire loss was suffered by fire, and that there was no loss because of the explosion. We believe that there was sufficient evidence to warrant the jury in finding that the total loss suffered by plaintiffs was caused by the fire. The instruction of the court to the effect that if the jury should find loss by explosion and loss by fire that then plaintiffs could only recover for the loss by fire, was, if anything, detrimental to plaintiffs in this case and not to defendants, inasmuch as plaintiffs contended that the whole loss was caused by fire.

We are of the opinion that the jury had sufficient evidence to enable it to make the distinction as to whether the explosion occurred independently of the fire, or whether the fire preceded it and caused it, or whether, if the explosion occurred independently of the fire, the loss sustained was by reason of the explosion or whether it was by reason of an ensuing fire. Con-

sequently, defendants' motions for judgment n. o. v. must be refused.

In relation to the motions for a new trial, many of the reasons heretofore given in considering the motions for judgment n. o. v. are applicable. The additional reasons filed by defendants in support of their motions for a new trial and for judgment n. o. v. are lumped together.

The twelfth additional reason assigned by defendants in support of their motions for a new trial is to the effect that the jury failed to follow the instructions of the court in the affirmance of the defendants' sixth point for charge which is as follows:

"If you find that plaintiffs swore falsely concerning the cause of loss or the value of the property lost and did so wilfully and knowingly and intending to defraud the insurance companies to whom the proofs of loss were submitted, then the policies will be rendered void and plaintiffs will not be entitled to recover" because the weight of the testimony was that plaintiffs did swear falsely and with intent to defraud defendants and therefore were not entitled to recover any amount.

The proofs of loss, signed by plaintiffs, state that the fire originated in a manner unknown to the insured, and that the amount of the loss was $5,194.28.

Defendants called plaintiffs as on cross-examination in order to show that the representations were false and that they were wilfully and fraudulently made by the insured. Plaintiff, Frank Varano, testified that the proofs of loss were brought to him by an insurance adjuster who told him to sign his name, and that he did not know what the proofs of loss contained. Plaintiff, Catherine Varano, testified that she knew that there had been an explosion or loud noise and that Cornetti had been arrested but she did not know how the fire started.

The court instructed the jury that they would have to find that plaintiffs concealed or misrepresented material facts with the intention of defrauding the insurance companies in order to avoid the policy on that ground. It is not only necessary to prove a false representation but it is also necessary for defendants to prove that the false representation was wilfully and fraudulently made by plaintiffs. The matter was properly left to the jury to decide whether there were false representations and if so, whether they were made wilfully and fraudulently with the intent to defraud defendants, and there was sufficient testimony for the jury to resolve this question in favor of plaintiffs. The court followed the decision of the Superior Court in Central Abattoir Company v. L. & S. Assurance Corp., 91 Pa. Superior Ct. 327, in instructing the jury on this point.

The sixteenth additional reason assigned by defendants is that

"The court erred in its charge to the jury of the measure of damages, in stating in portions of that charge that actual cash value prior to the fire was the measure, without stating that depreciation must be considered and the actual cash value must be diminished by depreciation."

We are of the opinion that there is no merit in this reason. In reviewing the charge of the court, the jury was instructed that the question for them to decide is

"What was the actual cash value of the property to the plaintiffs, with depreciation for use, etc., . . . immediately before the fire."

The term "actual cash value" was defined to the jury in the language used by the Supreme Court in Fedas v. Insurance Company of State of Pennsylvania, 300 Pa. 555, 562. The jury was further instructed that they were to seek a result which will enable the parties to restore their property to as near the same condition as it was at the time of the fire or pay for

it in cash. Throughout the charge on the question of damages, the court, while perhaps not using the term "depreciation" each time, instructed the jury that they would have to take into account the length of time the property had been in use and the use to which it had been put.

At the close of the charge, the court inquired of counsel for both plaintiffs and defendants whether there was anything further and counsel for both parties answered that there was nothing further. If defendants were of the opinion that the court did not adequately impress upon the jury the fact that depreciation must be taken into consideration, they should have called the attention of the court to that fact.

In Megliss v. Bartoletta et al., 159 Pa. Superior Ct. 308, the court held that where a judge asked counsel in substance if any further instructions are desired and counsel appears to be satisfied, even if a general exception is taken, one may not remain silent and afterward complain of matters, which, if erroneous, the court would have corrected. See also Medvidovich et al. v. Schultz, 309 Pa. 450, 453.

The seventeenth additional reason assigned by defendants in support of their motions for a new trial is that

"The court erred in failing to charge that if it is found that the building or a material part falls by any cause other than fire, then the insurance would cease, both as to building and contents, and there could be no recovery by the plaintiffs."

The policies sued upon in this case provide:

"If a building or any material part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

At the close of the charge of the court, counsel for defendants asked the court to instruct the jury as to this provision in the policy, which the court refused

on the ground that it was not set forth in the affidavit of defense, and that no testimony was presented in this regard. We are of the opinion that it would have been grossly unfair to plaintiffs to charge the jury on this clause of the policy inasmuch as the defense relied upon by defendants in their affidavits of defense makes no mention of this provision, and there was no testimony throughout the trial of the case which would indicate that defendants were relying upon any other exception in the policy other than the hazard of explosion. Issues of fact are those created by the pleadings, and defendants were limited to their pleaded defenses: See Ochs v. Reynolds, 155 Pa. Superior Ct. 469, 472.

As a general rule these provisions as to the fall of a building in fire insurance policies are regarded as conditions subsequent rather than exceptions; indeed, the court of but one jurisdiction (Texas) disagrees with this rule by regarding such clauses as exceptions to the general liability assumed by the insurer: 6 Couch, Cyclopedia of Insurance Law, §1280.

Considering the fall of building clause in connection with the other special exemptions which relate to events which might affect the structure of an insured building, it has been held that under policies containing also a specific stipulation exempting the insurer from liability for damage to the insured goods resulting from explosions of any kind unless fire ensues, and then for the damage by fire only, the standard fall of building clause will not defeat a recovery for damage by fire to insured property immediately following an explosion, though the insured building, or a part thereof, fell as a result of the explosion, the theory apparently being that, inasmuch as the only purpose of a fire insurance policy is to reimburse the insured for loss from fire, and this purpose is carried to such an extent as to make an exception to the insurer's exemption from loss following explosion, so that the insurer will be liable for damage by fire, though caused by an

explosion, the liability so carefully and concisely defined will not be allowed to be defeated by strict application of the fall of building clause. In other words, where liability is specifically defined in certain cases, the liability thus fixed should not be defeated by a strict or literal application of the exemption clause: 6 Couch on Insurance 4718 §1280.

In West Chester Fire Insurance Co. v. Chester-Cambridge Bank & Trust Co., 91 F. (2d) 609, the Circuit Court of Appeals for the Third Circuit, in a case arising on appeal from the District Court of the United States for the Eastern District of Pennsylvania, held that where a fire insurance policy provided that the insurer should not be liable for loss by explosion unless fire ensue, and then should be liable for loss by fire only, a further provision that insurance should cease if the building should fall, was not intended to relieve an insurer of liability for loss resulting from fire if falling of building was caused by an explosion.

Under the pleadings and the evidence on the trial of this case, we are of the opinion that there was no error in refusing to charge the jury in relation to the fall of building clause in the policies.

The other reasons assigned by defendants in their motion for a new trial and additional reasons have already been discussed in this opinion and we find them without merit.

For the foregoing reasons, the motion for a new trial must be refused.

*Order*

And now, to wit, November 10, 1947, defendants' motion for judgment n. o. v. is refused and defendants' motion for a new trial is overruled, and a new trial refused, and judgment is directed to be entered on the verdict. Let exceptions be noted and bills sealed for defendants.