## Apfelbaum & Neff v. Ins. Co. of North America, Appellant.

Argued November 18, 1929.

Before PORTER, P. J., TREXLER, KEL-

LER, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Horace Michener Schell,* for appellant.

*Ira E. Grim,* of *Grim & Grim,* for appellee.

OPINION BY TREXLER, J., January 29, 1930:

The plaintiffs instituted a suit upon two policies of insurance issued by the Fire Insurance Company of North America, the appellant. The trial resulted in a verdict for the plaintiffs. The question before us is whether judgment should have been entered in favor of the defendant, notwithstanding the verdict. The court refused the motion.

The policy provides that, "Unless otherwise provided by agreement in writing. added hereto, this company shall not be liable for loss or damage occurring —(g) by explosion or lightning, unless fire ensue, and in that event for loss or damage by fire only."

The testimony discloses that on December 13, 1926, at about 7:30 o'clock in the morning the insured premises were suddenly destroyed by an explosion. The question is whether or not under the evidence produced the jury could reach the conclusion that there was a

fire preceding the explosion. The court refused to enter judgment n. o. v. in favor of the defendant, but at the same time assented to the proposition that the plaintiffs had failed to prove their case. Notwithstanding this, the court granted a new trial in order that the plaintiffs might produce evidence showing what the fire damage was after the explosion.

We have carefully read the evidence and we think the court was wrong in the view which it took. We will quote some of the evidence, (omissions are not indicated). Jonas Apfelbaum, one of the plaintiffs, testified, "Between half-past seven, probably quarter of eight, I heard a noise or shot and the first thing I run out because it sounded pretty close to my place. My place is probably 125 or 150 feet away from the other building I owned, and I ran out to the place and seen the building was on fire. A lot of the walls scattered around and partly burned up debris. It didn't take more than half a minute to get there at the utmost. The wood that was scattered around was all burning and there was a good bit burned off. When I got to the building, I seen scattered around, flooring about 6 or 8 feet long and they were all burning fiercely and in fact were pretty near burned; 6 or 8 feet, 10 feet long, burned through, just a mass of flames. Q. What was the thickness or width of them? A. Well, about 2 by 4, or something of that sort."

Fred B. Neff, the other plaintiff testified that he had visited the building in the morning. "I went down, put the draft on the fire, and as I was about to leave I noticed smoke along the ceiling of the cellar and thought it smelled like wood smoke, I couldn't see any fire, and just having fixed my fire I thought there was smoke from that or smoke had drifted in the back door where I had come, and I left the building, went home and got breakfast. I didn't turn my light on and it was just light enough when I went in the

cellar so I could see to tend to my fire without any light, and it was a close, foggy morning, and just to the amount of smoke I couldn't say, but it was blue along the joist of the first floor. Q. Covering how much space? A. Well, I couldn't say exactly, but just what I noticed, there was a register in the floor near where I noticed the smoke, and I should say it was perhaps 5 or 6 feet square, just a cloud of smoke." "As I got there [after the explosion] the fire was coming up through the debris, through the lumber at several places. We immediately started to get this person out from under the debris, and I pulled several pieces of lumber out that I should say were six or eight feet long, and perhaps some 2 by 4's and one in particular I remember a 2 by 6 which were burned off at the ends that were pulled out of the debris. Q. How soon did you get there after the explosion occurred? A. Well, I should say only a few seconds, because it doesn't take long to run 50 feet. Q. Where was this lumber that had been burned off? A. About in the middle of the building."

The expert called by the defendant was asked the question in regard to the heat generated by an explosion, "It is hardly probable that it would burn through a piece of wood 3 x 4?" and answered, "It would be a very remote possibility." There was other evidence that there was smoke in the building before the explosion took place. One of the occupiers of the apartment came home on the evening preceding the fire and said that she noticed smoke as she entered the building. It was in the hallway, in the stairway and through the entire apartment. This she also noticed at 3:30 on Monday morning when she got up to get her husband's breakfast. She again awoke about ten or twelve minutes before the explosion and the smoke had increased in the apartment. There was no odor of gas. She noticed when she got awake in the

morning just before the explosion that the face of her child was black. After the explosion, when she washed the child's face and her own, her handkerchief was coal-black with soot. The furnace which supplied heat for the building was in good condition and there was no evidence of the explosion having originated in it. The expert called by the defendant testified that the seat of the explosion was in the front room. There was no evidence that anything of an explosive character was kept in the building.

The above recital of the testimony shows, we think, that the case was for the jury. There was enough here to sustain the position taken by the plaintiffs and to make it probable that a fire other than a heater fire was in progress in the building before the explosion took place. The presence of smoke preceding the fire, the absence of any evidence showing that the heater, a "friendly" fire, could have caused the fire, the burnt condition of the timbers which were scattered about by the explosion, all tend to that conclusion. We are treating with an occurrence which was instantaneous. Common experience teaches us that however violent the explosion, and however intense the heat germinated, it is "a very remote possibility," to quote the defendant's witness, that such heat would burn through a piece of wood three by four, or cause such advanced ignition of the debris as is described by the witnesses.

The jury had sufficient evidence to enable them to make the distinction as to whether the explosion occurred independent of the fire or whether the fire preceded it and caused it. Trexler Lumber Co. v. Allemannia Fire Ins. Co., 289 Pa. 13; Warmcastle v. Scottish Union & National Insurance Co., 210 Pa. 362. It was not required that the testimony of the case should demonstrate that there was a fire preceding the explosion. The jury could by the weight of the evidence

legitimately draw the inference that the fire did precede the explosion.

We are all of the opinion that the court was right in dismissing the rule for judgment n. o. v. We think the court was wrong in granting a new trial. The appellant will have another chance to try the case and the appellee is not in a position now to object, so we will not disturb that order.

The order of the court refusing to enter judgment n. o. v. in favor of the defendant is affirmed.

LINN, J., did not participate in this decision.