Harbridge et ux. *v.* Mutual Fire Insurance Company of Chester County, Appellant.

Harbridge *v.* National-Ben Franklin Fire Insurance Co. of Pittsburgh, Appellant.

Argued October 26, 1942.

 Be-
fore KELLER, P. J. CUNNINGHAM, BALDRIGE, RHODES,
HIRT and KENWORTHEY, JJ. 

*Douglass D. Storey,* of *Storey* and *Bailey,* with him
*W. Albert Ramey,* for appellants.

*Lisle D. McCall,* for appellees.

OPINION BY HIRT, J., January 28, 1943:

Plaintiffs' dwelling house in DuBois together with
their household furniture was insured against fire loss
by defendant Mutual Company. The policy of defend-
ant Ben Franklin Company covered the furniture alone.
In the early evening of August 21, 1940, a fire of un-
known origin occurred in the cellar of the house, ac-
companied by an explosion. There was little damage
from fire; more serious damage resulted from the force
of the explosion. The cases were tried together. The
jury found that plaintiffs' total loss was $1,000. The
proportionate amounts assessed against the two defend-
ants in the judgments entered by the lower court are
not disputed. Each defendant in these appeals, how-
ever, contends that there is no liability under the terms
of its insurance contract with the plaintiffs.

Plaintiffs' house was a two story frame building with
a cellar and an attic. They, with their three sons, had
occupied it for many years as a dwelling. The sons
conducted a furniture business in DuBois at another
location. On occasion, plaintiff Minta Harbridge
cleaned rugs for others on the floor of the attic. In
the process she used a mechanical device consisting of
a rotary brush operated by an electric motor. Soap

and water were the only cleaning materials used. She made a charge for this service. In the cellar there was a wood turning lathe operated by a small electric motor. There is no evidence that this lathe was used in connection with the sons' furniture business or otherwise for profit. All of the testimony is that its occasional use was as a hobby.

The use of these two electrically operated devices did not necessarily void the policies under specific provisions which limited the use of electricity on the premises.[1] That question became one largely of fact, as to the character and extent of the use, and was properly submitted to the jury. We agree with the lower court that "the mere ...... use of such appliances and tools, even though occasionally for gain on the part of some member of the household does not change the general and comprehensive use of the building." A housewife who uses an electrically driven sewing machine or a washing machine for incidental and occasional profit does not affect the character of the occupancy of the house as a dwelling. The uses here complained of, are similar. The Supreme Court has stated the applicable rule thus: "The determinative factor is the general and comprehensive use of the structure. While there may be another incidental use not inconsistent with occu-

---

[1] The policy of the Ben Franklin Company granted the limited privilege "To use electricity for light, heating and domestic purposes when building is occupied exclusively as a dwelling; if building is occupied in whole or in part for purposes other than dwelling, the use of electricity is prohibited unless otherwise provided by agreement in writing added to this policy."

The following is the only provision in the Mutual Company policy on the subject: "Permission is hereby granted for such use of the premises as is usual and incidental to the occupancy herein described, and to keep and use all such appliances, devices, articles and materials, including such materials as are prohibited by the printed conditions of this policy, in such quantities as are usual and incidental to such occupancy."

pancy as a dwelling, the situation is otherwise where a large part of the building is devoted to the systematic operation of a commercial enterprise": *Smith v. Penn Twp. M. Fire Assn.*, 323 Pa. 93, 186 A. 130. The policy must be construed most strongly against the insurer and in favor of insured. *Francis v. Prudential Ins. Co.*, 243 Pa. 380, 90 A. 205; *Krebs v. Phila. Life Ins. Co.*, 249 Pa. 330, 95 A. 91. There was nothing inherently hazardous in the use of these appliances. They might be found in any household. Five people lived in this small house. By the verdict it is established that the dominant use of the premises was exclusively residential. Plaintiffs' use of electricity did not violate the terms of either policy.[2] Cf. *Lancaster Silver Plate Co. v. Fire Assur. Co.* 170 Pa. 166, 32 A. 616.

These uses of electricity, in the light of the verdict, did not suspend the obligations of these defendants by increasing the hazard.[3] Minta Harbridge was 69 years old; it is a fair inference that the rug cleaning business which she conducted in her attic was not extensive. Moreover, there is no evidence on either side, except by inference, that a single rug was cleaned on the premises during the terms of the policies. The burden of defeat-

---

[2] The cases cited by appellants deal with entirely different provisions. In *McCurdy v. Orient Ins. Co.*, 30 Pa. Superior Ct. 77, recovery was denied where gasolene was kept on the premises and fire resulted from its prohibited use. *Rykill v. Franklin Fire Ins. Co.*, 80 Pa. Superior Ct. 492 (distinguished in *Murphy & Co. v. Mfg's Cas. Co.*, 89 Pa. Superior Ct. 281 and followed in *Orcutt v. Erie Indemnity Co.*, 114 Pa. Superior Ct. 493, 174 A. 625) had to do with a provision of an automobile casualty policy prohibiting its use for carrying passengers for hire. In the Murphy case, supra, it was held that the occasional use of an automobile owned by an officer of the company to supply an employee with materials necessary to the prosecution of its work did not violate the policy prohibiting commercial deliveries.

[3] Each policy provides: "This company shall not be liable for loss or damage occurring . . . . . . while the hazard is increased by any means within the control of the insured."

ing a claim because of increased hazard is on the insurer. 8 Couch on Insurance, §2217. The defense is affirmative. *Bowers v. Great Eastern C. Co.*, 260 Pa. 147, 103 A. 536. True, there is testimony by a witness for defendant that such use would increase the premium rate above that paid by plaintiffs. The question was one of fact and was submitted to the jury by the learned trial judge, in a charge which refers to all of the testimony on the subject and. correctly states the law. The verdict determined that the defendants assumed the hazards existing at the time of the fire.

A more serious question is whether the explosion which caused most of the damage resulted in sequence from a 'hostile' fire, imposing liability on defendants (5 Couch on Insurance, §1197), or whether the explosion caused the fire, in which event defendants would be liable for the ensuing fire loss only. Both policies contain the provision that the company "shall not be liable for loss or damage occurring . . . . . . by explosion . . . . . . unless fire ensue, and in that event for loss or damage by fire only."

The fire occurred in August and the furnace in the cellar was not in operation. There was no 'friendly' fire in the cellar. There was a hot water heater with a gas flame and a motor operating a refrigerator in a laundry located outside the cellar walls and a heavy wooden door between the laundry and the cellar was closed. Three members of the household were in the house but none of them smelled smoke or had notice of a fire until after the explosion. One of the sons ran from the kitchen into the cellar through the doorway leading from the laundry and arrived there in less than one-half minute after the explosion. He found the cellar a mass of flames. Papers were blazing in several places. An upholstered chair under the stairway leading to the dining room was burning as well as the wooden stairway above it. He was joined almost im-

mediately by a workman from a neighboring lot and the two tried to stamp out the fire. Shortly thereafter someone brought in a garden hose and the fire was put out. The fire was confined to the cellar; there was no evidence of fire in the laundry. Parts of the wooden stairway were admitted in evidence at the trial and from their charred condition, (stated to be one-half inch deep) plaintiffs, at the trial, contended that they must have been burning longer than the five minutes consumed in extinguishing the fire following the explosion.

The burden was on plaintiffs to prove that a 'hostile' fire caused the explosion. *Tannenbaum v. Fire Ins. Companies,* 127 Pa. Superior Ct. 278, 193 A. 305. But where, as here, the proof rests largely upon circumstantial evidence, "the question is not whether the circumstances exclude every other hypothesis, but whether they fairly support the theory advanced by plaintiff and exclude by their preponderating weight the theory advanced by defendant. . . . . . . The proof derived from the circumstances is a question of natural presumption, and is to be found by the jury." *Curran v. Natl. L. Ins. Co., U. S. of A.,* 251 Pa. 420, 96 A. 1041; *Neely v. Insurance Co.,* 322 Pa. 417, 185 A. 784; *Reed v. Horn's Motor Express, Inc.,* 123 Pa. Superior Ct. 411, 187 A. 275.

The verdict of the jury based upon evidence sufficient for a decision of the question was something more than a mere guess. There is evidence that the explosion was not caused by a 'friendly' fire. The exhibits of charred wood were competent evidence supporting the inference, favorable to plaintiffs, that the fire preceded the explosion. *Apfelbaum & Neff v. Ins. Co. of N. A.,* 98 Pa. Superior Ct. 335. "Cases doubtful on their facts, or the inferences to be drawn therefrom, are as a rule for the jury and not for the court": *Francis v. Prudential Ins. Co.,* supra. Defendants in cases such as these are not

relieved from liability merely because of the difficulties confronting a plaintiff in his proofs. Judgments n.o.v. were properly refused and there is no ground for granting new trials.

Judgments affirmed.