## AMERICAN NATIONAL FIRE INSURANCE COMPANY *v.* LAPIDUS

## INSURANCE COMPANY OF NORTH AMERICA *v.* LAPIDUS

(Two Appeals in One Record)

[No. 185, October Term, 1955.]

*Decided June 20, 1956.*

The cause was argued before COLLINS and HAMMOND, JJ., and MOSER, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Arold H. Ripperger,* with whom was *Harry W. Allers* on the brief, for the appellants.

*Herbert L. Grymes* for the appellee.

MOSER, J., by special assignment, delivered the opinion of the Court.

Separate suits were filed in the Superior Court of Baltimore City by Samuel Lapidus, the appellee, against the In-

surance Company of North America and American National Fire Insurance Company, appellants, to recover amounts which were alleged to be due under separate policies of fire insurance issued by each Company. The cases were consolidated at *nisi prius* in the Superior Court of Baltimore City.

The trial resulted in judgments for the appellee in the amount of $500.00 against the Insurance Company of North America and $300.00 against American National Fire Insurance Company.

This appeal involves the construction of the policies of insurance, with special emphasis upon alleged forfeiture of the appellee's right to recover because of an alleged prohibited use of the insured premises.

The appellee, Samuel Lapidus, is the owner of property known as No. 1029 North Eutaw Street, in the City of Baltimore, said property being improved by a three-story brick building which fronts on Eutaw Street and a two-story brick building at the rear of the lot which fronts on an alley known as Jordan Street. The buildings are detached. On January 6, 1955, at which time the insurance policies were in effect, the two-story building was damaged by fire. The fire insurance policy carried by the Insurance Company of North America was in the amount of $5,000.00, and the policy of the American National Fire Insurance Company was in the amount of $3,000.00. Both policies contained an identical clause providing as follows:

> "The insured may apply up to ten per cent (10%) of the amount specified for Item I to cover all private structures appertaining to the described premises and located thereon, but not structures used for mercantile, manufacturing or farming purposes."

The Item I referred to in the aforegoing clause related to the coverage of $5,000.00 and $3,000.00 hereinbefore recited.

The fire damage was in the amount of $2821.00. Pursuant

to the aforegoing clauses of said policies, the appellee made demand upon the appellants for payment of the damages. Liability was denied and is contested here on the ground that at the time of the fire the outbuilding, which at one time was a carriage house, was used for mercantile purposes and thereby within the use prohibition contained in the policies.

At the time of the fire the garage had been rented by Lapidus to Joseph Johnson. The tenant stored a truck in the garage and it was for this use that the garage had been rented to him. Incidental to Johnson's outside operations with the truck, he occasionally acquired scrap lumber, furniture and other odd articles. These he would either have on his truck when he brought it in, or leave in the garage until he could dispose of them on the outside.

Under examination by counsel for the appellants, Johnson testified as follows:

"Q. Did people in the neighborhood ever come down to you and buy wood which they would carry on home or ask you to deliver it to them?

A. Well, I mean I was only there sometimes, when I was unloading the wood there; when I was unloading or loading up wood.

Q. When you were taking wood off the truck to put in the building or taking it out of the building to put on the truck people would come down and buy wood from you then?

A. Might ask me about a load then, a basket of wood while I was loading the thing."

Cross-examined by appellee's attorney, Johnson testified:

"Q. You sold the wood from the truck, is that right?

A. Yes, I peddle wood right on the truck.

Q. And this business of having wood was just an occasional happening? You didn't do that regularly? It was just once in a while you had some wood, isn't that right?

A. I mean I didn't have the wood in there regular, but I mean I sold wood sometimes.

Q. Whenever you had it?

A. Yes.

Q. And you only had it occasionally?

(The Court) Where do you get the wood?

(The Witness) I clean out cellars and yards.

(The Court) Where did you get the wood that you sold?

* * *

(The Witness) Sometimes I clean out cellars and things and get it, and sometimes I get it wherever I was working at.

Q. (by appellee's attorney). It would just be scrap wood wherever you would be working. You do hauling. Hauling is your regular business, isn't it?

A. Hauling and moving."

The trial court held that a fair interpretation of the facts did not warrant a forfeiture under the mercantile use clause of the policies and rendered judgments for Samuel Lapidus.

The conclusion from the evidence is that sometimes an occasional sale of a little wood was made when Johnson was either loading or unloading his truck. There is no evidence of any regular use that could be termed mercantile, manufacturing or farming under the applicable provisions of the policies. The regular use of the garage was for the storage of the truck which Johnson used in connection with his regular business of hauling, moving and of cleaning out cellars.

The memorandum opinion of the trial court contains this language: "* * * I think a practical interpretation of the evidence shows that this carriage house or garage was large and Mr. Johnson came to see Mr. Lapidus and wanted to rent the place for storing his truck. I think the practical interpretation of the evidence shows that Mr. Johnson was, you might call it, in the business of doing odd jobs. He would clean out houses. He would do hauling, and apparently would do anything that he could do with the truck in order to make a living.

"Incident with the cleaning out of houses and also, I suppose, with his hauling he would get some wood and junk

from time to time and if he got it he would sell it to anyone he could find. From time to time when he brought his truck to the garage he would take the wood and junk that was left in the truck and throw it into the second floor of the garage.

"There is testimony by Mr. Johnson that he did sell some wood at the garage, but he says that he only did that when he would be in front of the garage, or in the garage with the truck, and if somebody accidentally came by and saw wood on the truck he would sell this passerby a basket or so of wood. I don't think, gentlemen, that that amounts to a mercantile business or operation."

The findings of fact below appear amply justified by the evidence. Interestingly, the claim adjuster for one of the appellants did not, nor did such appellant at the time claim was made, raise as a defense the use of the garage by Johnson but indicated that the basis of denial of the claim was the fact that Johnson was not a tenant in the main building at 1029 North Eutaw Street.

Even an occasional disapproved use would not warrant a forfeiture. *Harbridge v. Mutual Fire Ins. Co.,* 151 Pa. Super. 278 (1943), 30 A. 2d 360.

In the *Harbridge Case, supra,* the fire policy prohibited the use of electricity in the premises for other than dwelling purposes. It was held that an occasional use of electrical appliances and tools by some member of the household would not avoid liability, the determining factor being the general and comprehensive use of the premises.

Vide also *Jervis v. Burlington Mutual Fire Insurance Company,* 113 Vt. 518, 37 A. 2d 374; *Siemers v. Meeme Mutual Home Insurance Company,* 143 Wis. 114, 126 N. W. 669.

There was no evidence that the occasional sale of wood from the truck outside of the garage prejudiced the appellants or increased the risk. See *Planters Mutual Ins. Co. v. Rowland,* 66 Md. 236, 7 A. 257; *Howell v. Baltimore Equitable Society,* 16 Md. 377.

Courts do not favor forfeiture of insurance contracts unless

a prohibited use can be shown to have increased the hazard or had some relation to the fire. *Miss. Home Insurance Co. v. Stevens,* 93 Miss. 439, 46 So. 245; and also *Allen v. Insurance Co.,* 2 Md. 111.

The lower court found no evidence of a mercantile use and in this finding this Court concurs. One of the definitions of "mercantile" which appears in the Century Dictionary is, "* * * buying and selling of goods or merchandise, or dealing in the purchase or sale of commodities, and that, too, not occasionally or incidentally, but habitually as a business."

Johnson was a truck operator and handyman who occasionally picked up articles that could be sold, but his basic operation was hauling, moving and cleaning out cellars. Strict proof of facts to justify forfeiture is required. See *U. S. Fire Ins. Co. v. Kimberly,* 34 Md. 224.

In *Smith v. Penn. Township Mutual Fire Assoc.,* 323 Pa. 93, 186 A. 130, the Court said, in ascertaining the character of the occupation of insured premises, that "The determinative factor is the general and comprehensive use of the structure."

The dominant use is the determinative factor. 45 C. J. S., *Insurance,* Sec. 551, note 46, at page 295; *Harbridge v. Mutual Fire Ins. Co., supra.*

The judgments at *nisi prius* will be affirmed.

*Judgments affirmed, with costs.*