702 A.2d 422

## NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

v.

**Stephen C. TUFTS, et al.**

**No. 226, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Nov. 4, 1997.

182

Pamela Randi Johnson (Pamela Jean Aud and Budow & Noble, P.C., on the brief), Ellicott City, for appellant.

Leonard Tober, Baltimore, for appellees.

Argued before DAVIS, HOLLANDER and KENNEY, JJ.

DAVIS, Judge.

Nationwide Mutual Fire Insurance Company (Nationwide or appellant) appeals from the judgment of the Circuit Court for Howard County (Kane, J.) denying its motion for summary judgment, motions for judgment, and motion for judgment notwithstanding the verdict. Appellees Stephen C. Tufts and Sandra Tufts filed suit against Nationwide to recover $24,-244.35 in stipulated damages under a homeowner's "golden blanket" insurance policy for the value of their barn which had been destroyed by fire. The court denied Nationwide's motion for summary judgment, motions for judgment, and motion for judgment notwithstanding the verdict and entered judgment in favor of appellees. On January 2, 1997, appellant timely noted this appeal and raised one question for our review, which we restate below:

> Did the trial court err when it denied appellant's motion for summary judgment, motions for judgment, and motion for judgment notwithstanding the verdict when the insurance policy excluded coverage of other structures used for "business purposes," and the barn was periodically used for the storage of business property?

We answer the question in the negative and affirm the judgment of the trial court.

## FACTS

Appellees owned a "golden blanket" homeowner's insurance policy from appellant. On November 8, 1994, a fire destroyed appellees' barn and its contents. At the time of the fire, appellees stored both personal property and business property in the barn. The business property included tools, equipment, and materials from appellees' business, Dayton Drywall Com-

pany, Inc. (Dayton Drywall). Appellees made claims for both types of property with their respective insurers. Aetna Insurance Company (Aetna), the insurer of appellees' business, paid its $10,000 limit for the business property damaged and destroyed in the fire. Appellant made payments for the personal property but denied coverage for the barn structure based on an exclusion contained in the homeowner's policy. The coverage exclusion, under Section I—Property Coverages, Coverage B—Other Structures, provides:

We do not cover other structures:

 a. used in whole or in part for *business* purposes.

The policy defines "business" as follows: " *'Business'* includes trade, profession, or occupation. An office, school, studio, barber or beauty shop of an *insured* on the *residence premises* is not a *business* if its occupancy is described in the policy." The terms "business purposes" and "purpose" are not defined in the policy.

Appellant filed a motion for summary judgment on March 5, 1996, asserting that the undisputed facts and the clear language of the policy entitled it to judgment as a matter of law. Appellees countered, arguing that the policy provision in question was ambiguous giving rise to different permissible inferences. As such, appellees contended that there was a question as to whether appellees' storage of business property in the barn constituted use for "business purposes." The trial court, by memorandum and order, dated April 8, 1996, denied appellant's motion for summary judgment and the case proceeded to trial on November 4, 1996.

During appellees' case, Mr. Tufts testified that, at the time of the fire, he was using the barn partly for storage of business equipment and supplies, as he did on occasion. Ms. Tufts testified that, at the time of the fire, she and her husband were essentially self-employed, working for Dayton Drywall, which did commercial drywall work in Maryland, Northern Virginia, and the District of Columbia. Ms. Tufts testified that ninety percent of the barn was used for storage of personal property, but the other ten percent was occupied

by left-over business supplies and tools. She claimed that the business tools and equipment that were in the barn at the time of the fire were a result of the business's impending failure.

Mr. Tufts stated that the barn was never used to construct anything used for the company's jobs and that no business was conducted out of the barn. He testified that the company did use the barn to store some business tools and equipment, but only between jobs. Additionally, he verified that he had made a claim with Aetna for the business property that had been destroyed by the fire in the barn.

At the end of appellees' case, appellant made a motion for judgment, arguing that the evidence and the language of the policy entitled appellant to judgment as a matter of law. The trial court reserved ruling on the motion.

Appellant's case began with the testimony of Mark Pilch, the Aetna claims representative who handled appellees' claim for lost business property. Mr. Pilch testified that Aetna paid the claim because the tools and equipment damaged or destroyed in the fire were owned by the appellees' business, Dayton Drywall.

Next, James Reilly, appellant's claims representative, testified regarding the basis for the denial of appellees' claim for the barn structure. He stated that Nationwide believed that the storage of business property in the barn constituted use for business purposes, and thus, appellant denied the claim.

At the conclusion of all the evidence, appellant renewed its motion for judgment and again the court reserved its ruling. The case was submitted to the jury, which found that appellees were not using the barn, in whole or in part, for business purposes. The court denied appellant's subsequent motion for judgment notwithstanding the verdict and this appeal followed.

## DISCUSSION

### I

Appellant argues that the trial court erred when it denied appellant's motion for summary judgment, motions for judg-

ment, and motion for judgment notwithstanding the verdict. As review of the motions requires us to apply different standards of review,[1] we discuss the motions separately.

### Motion for Summary Judgment

■ The standard for appellate review of a trial court's denial of a motion for summary judgment requires us to determine whether the trial court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 590–91, 578 A.2d 1202 (1990); *Barnett v. Sara Lee Corp.*, 97 Md.App. 140, 146, 627 A.2d 86, *cert. denied*, 332 Md. 702, 632 A.2d 1207 (1993). In so doing, we review the same material from the record and decide the same legal issues as the circuit court. *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied, Scherr v. Nationwide*, 337 Md. 214, 652 A.2d 670 (1995).

Motions for summary judgment are governed by MARYLAND RULE 2–501, which provides that, "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." MARYLAND RULE 2–501(e) (1997). *See also Bagwell v. Peninsula Regional Medical Ctr.*, 106 Md.App. 470, 488, 665 A.2d 297 (1995) (holding trial court to same requirements as MD.RULE 2–501). In making its determination, the circuit court must view the facts and all inferences from those facts in the light most favorable to the non-moving party. *Brown v. Wheeler*, 109 Md.App. 710, 717, 675 A.2d 1032 (1996).

■ When the underlying facts are undisputed, but produce more than one permissible inference, the choice between those inferences should not be made by the court as a matter of law, but should be submitted to the trier of fact. *Fenwick Motor*

---

1. A motion for summary judgment contrasts sharply with motions for directed verdicts (motions for judgment) or a motion for judgment notwithstanding the verdict, as the latter two test the legal sufficiency of the evidence adduced. *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981).

*Company v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970). The Court of Appeals has observed that

[t]he jury's function in the interpretation of documents then will arise wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing is not so clear as to preclude doubt by a reasonable man of its meaning. If the meaning after taking the parol evidence, if any, into account is so clear that no reasonable man could reach more than one conclusion as to the meaning of the writing under the circumstances, the court will properly decide the question of fact for itself as it may any question of fact which is equally clear.

*Montauk Corp. v. Seeds,* 215 Md. 491, 497, 138 A.2d 907 (1958) (quoting S. WILLISTON, 4 A TREATISE ON THE LAW OF CONTRACTS § 616 at 660–63 (3d ed.1957)).

 Citing *Cheney v. Bell Nat'l Life Ins. Co.,* 315 Md. 761, 556 A.2d 1135 (1989), appellant correctly asserts that, when there are no factual disputes, the trial court must interpret insurance policies using the ordinary and accepted meanings of the words set out in the policy. Appellant, however, contends that the undisputed storage of business tools, equipment, and supplies in appellees' barn required the lower court to determine as a matter of law whether the barn was being used for "business purposes" as meant by the insurance policy. We disagree.

 In order to see whether there existed a dispute as to material facts, we must determine first whether the terms of the contract are ambiguous. *Consumers Life Insurance Company v. Smith,* 86 Md.App. 570, 574, 587 A.2d 1119 (1991). Ambiguities in insurance policies are construed against the drafter. *Bailer v. Erie Ins. Exchange,* 344 Md. 515, 522, 687 A.2d 1375 (1997) (citing *Cheney,* 315 Md. at 766–67, 556 A.2d 1135 (1989)). Additionally, as stated *supra,* even if the underlying facts are undisputed, if they give rise to more than one permissible inference, the trial court must submit the issue to the jury. *Fenwick,* 258 Md. at 138, 265 A.2d 256. Therefore, in order to be successful on a motion for summary judgment,

there must be no ambiguity in the insurance policy on its face. *Id.* There is "no hard and fast" rule for resolving whether certain language is ambiguous. *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 718, 357 A.2d 350 (1976). "Each case must, in the final analysis, stand or fall upon its own facts." *Id.*

■ The insurance policy in this case clearly defines "business," but fails to define "business purposes" and "purpose." There are no Maryland cases directly on point defining "business purpose." Black's Law Dictionary 137 (6th ed.1991), defines "business purpose" in relevant part as a

"[t]erm used on occasion to describe the use to which property may be put or not, as in a deed's restrictive covenant. A justifiable business reason for carrying out a transaction. . . ."

It defines "purpose" as

[t]hat which one sets before him to accomplish or attain; an end, intention, or aim, object, plan, project. Term is synonymous with ends sought, an object to be attained, an intention, etc.

Black's Law Dictionary 862 (6th ed.1991).

The underlying evidence regarding the fire and the contents of the barn is undisputed. The facts are that appellees occasionally used the barn for storage of some business supplies, equipment, and tools between jobs. The business property amounted to approximately ten percent of the contents of the barn; the rest was personal property. No work for the business was done in the barn. At the time of the fire, appellees were storing some business property in the barn because the business had been experiencing financial difficulty and was closing down. The fire was set by an unknown individual or individuals.

The facts create more than one possible inference. One possible inference is that the storage of business property in the barn indicates appellees' use of the barn as part of the business and for "business purposes." One also, however, could infer from the relatively small amount of business

property in the barn that it was not being used for "business purposes." The timing of, and the reasons for, the storage also may indicate that the barn was not considered or used by appellees as part of their business or for "business purposes."

The myriad of possible inferences is due to the ambiguity in the insurance policy. Drafters of insurance policies have it within their power to draft policies without ambiguity, so that exclusions and coverage options are not open to more than one inference or interpretation. That was not done in this case. Noting, as we did earlier, that ambiguities that create multiple inferences also create jury questions, that all inferences must be viewed in the light most favorable to the non-moving party, and that ambiguities are construed against the drafter, we perceive no error in the trial court's denial of appellant's motion for summary judgment.

### Motions for Judgment

■■■■ In reviewing a trial court's denial of a motion for judgment in a jury trial, we must conduct the same analysis as the trial court, viewing all evidence in the light most favorable to the non-moving party. *Martin v. ADM Partnership*, 106 Md.App. 652, 657, 666 A.2d 876 (1995), *cert. granted, ADM Partnership v. Martin*, 341 Md. 719, 672 A.2d 659 (1996). We may affirm the lower court's denial of the motion if there is any evidence, no matter how slight, legally sufficient to generate a jury question. *Washington Metro. Area Transit Auth. v. Reading*, 109 Md.App. 89, 94, 674 A.2d 44 (1996).

■■■■ MARYLAND RULE 2–519, which governs motions for judgment, provides that, "[a] party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted." MARYLAND RULE 2–519 (1997). In this case, viewing the evidence in the light most favorable to appellees—the non-moving party—we conclude that there was evidence legally sufficient to create a jury question. We explain.

We are persuaded, as noted above, that the policy is ambiguous. This ambiguity rendered summary judgment inappropriate and necessarily required a jury's fact-finding. The testimony of appellees was that the barn was not used for business purposes, but only to store temporarily relatively small quantities of business property. Under these circumstances, we believe that there was evidence legally sufficient to create a jury question.

We now discuss appellant's second motion for judgment, which was made at the close of all of the evidence and held *sub curia* by the trial court. Appellant actually termed this motion as a renewal of the first motion for judgment. We, however, will treat it as a new motion for judgment, as motions for judgment at the close of all of the evidence are reviewed in a slightly different light than those made at the close of a plaintiff's case.

MARYLAND RULE 2–532 states that, "[i]f the court reserves ruling on a motion for judgment made at the close of all the evidence, that motion becomes a motion for judgment notwithstanding the verdict if the verdict is against the moving party . . . ." In this case, the trial judge reserved ruling on the motion for judgment made at the close of all of the evidence and the verdict was against appellant. The propriety of the motion for judgment may, therefore, be determined congruent with our discussion of the motion for judgment notwithstanding the verdict made by appellant after the verdict was rendered.

### Motion for Judgment Notwithstanding the Verdict

A motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence and is reviewed under the same standard as a motion for judgment made during trial. *Houston v. Safeway Stores, Inc.*, 109 Md.App. 177, 182–83, 674 A.2d 87 (1996), *cert. granted*, 343 Md. 334, 681 A.2d 70 (1996) *rev'd on other grounds*, 346 Md. 503, 697 A.2d 851 (1997). To this end, we must assume the truth of all credible evidence and all inferences of fact reasonably deductible from the evidence supporting the party opposing the

motion. *Id.* at 183, 674 A.2d 87. If there exists any legally competent evidence, however slight, from which the jury could have found as it did, we must affirm the trial court's denial of the motion. *Id.*

Motions for judgment notwithstanding the verdict are made, pursuant to MARYLAND RULE 2–532, which provides that, "[i]n a jury trial, a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion."

■ We hold that there was legally competent evidence from which the jury could have found for appellees as they did. Appellees' testimony was that the business was not run from the barn. Only ten percent of the contents of the barn was business property while the rest was personal property. Nothing used in the business was made in the barn. Significantly, the business property was stored in the barn only between jobs and when the business was closing down. Assuming the truth of the evidence and all inferences of fact reasonably deducible from the evidence supporting appellees, we find that there was sufficient evidence for the jury to conclude as it did. We, therefore, affirm the trial court's denial of the motion for judgment notwithstanding the verdict.

## II

In addition to its argument in favor of the motion for summary judgment, appellant, in circular fashion, contends that the trial court committed prejudicial error when it submitted to the jury the issue of whether the storage of business materials in the barn was, in whole or in part, a "business purpose." Based on our previous analysis, we disagree with appellant's position.

■ As appellees assert, and as our discussion *supra* indicates, once it was established that appellant was not entitled to summary judgment, it became the province of the jury to determine whether the barn was being used for

business purposes. Maryland case law clearly dictates that an ambiguity in an insurance policy negates the possibility of summary judgment and requires interpretation by the jury as fact finder.

Appellant reiterates that the construction and interpretation of the policy was within the province of the court because the term "business purposes" is unambiguous. Based on this position, appellant claims that submitting the case to the jury was prejudicial rather than harmless error because it changed the outcome of the case.

Appellant's contention is a bald, unsupported allegation. There is no indication in the record that, absent submission to the jury, the court would have found as a matter of law that the barn was used for "business purposes." Absent the ambiguity, the court may have decided as a matter of law that the temporary storage of business property did not amount to use for "business purposes." Indeed, Maryland case law seems to support the latter possibility. We explain.

As noted above, "business purposes" in the context of this case is not defined by Maryland case law. The Court of Appeals has, however, defined use "for mercantile ... purposes." *Insurance Co. of North America v. Lapidus,* 210 Md. 389, 390–95, 123 A.2d 597 (1956). In that case, the owner of a building damaged by fire sought recovery under two policies prohibiting use "for mercantile ... purposes." *Id.* The building was rented to a truck operator and handyman who occasionally picked up articles that could be sold, but whose basic job was hauling, moving, and cleaning out cellars. *Id.* The Court held that there was no evidence of mercantile use nor did the occasional sale of wood from the truck outside of the building prejudice the insurers or increase the risk of fire. *Id.* The Court pointed out that "mercantile" is defined as the "buying and selling of goods or merchandise ... not occasionally or incidentally, but habitually as a business." *Id.* Thus, even with clearly defined terms, the court declined to hold that coverage should be denied due to an occasional selling of merchandise outside the premises, stating that, "[e]ven an

occasional disapproved use would not warrant a forfeiture." *Id.* at 394, 123 A.2d 597 (citing *Harbridge v. Mutual Fire Ins. Co.*, 151 Pa.Super. 278, 30 A.2d 360 (1943)).

In *Harbridge,* the insurance policy prohibited the use of electricity on the premises for other than dwelling purposes. It was held that an occasional use of electrical appliances and tools by some member of the household would not avoid liability, the determining factor being the general and comprehensive use of the premises. Additionally, "[c]ourts do not favor forfeiture of insurance contracts unless a prohibited use can be shown to have increased the hazard or had some relation to the fire." *Lapidus,* 210 Md. at 394–5, 123 A.2d 597 (citing *Miss. Home Ins. Co. v. Stevens,* 93 Miss. 439, 46 So. 245 (1908) and *Allen v. Mutual Fire Ins. Co.,* 2 Md. 111 (1852)).

In the instant case, the temporary storage of business property constituting ten percent of the barn's contents would not constitute the general comprehensive use of the barn. There was also no evidence that the storage of the business property in the barn increased the risk of property loss by fire or otherwise.

It would be illogical for this Court to draw a bright line, holding that any storage of business property on residential premises constitutes use of those premises for "business purposes," and thus, we are hesitant to so hold. Under appellant's view of "business purposes," temporary storage of a company car in a separate garage on a residential premises would bar recovery should the garage be destroyed by fire. Additionally, a caterer's storage of cookbooks in his separate garage or barn might forfeit insurance coverage should the structure be destroyed or damaged. A further illustration of how far the principle could extend would be considering a vehicle as being used for a business purpose simply because one places a brief case inside. We believe such results to be illogical and beyond the intent of most purchasers of homeowner's insurance policies.

The applicable policy provisions are ambiguous, making it impossible to make a determination as a matter of law. Thus, summary judgment would have been improper. The motion for judgment was properly denied because appellees, as plaintiffs below, presented sufficient evidence to generate a jury question. By the same token, we hold that there was sufficient evidence for the jury to find as it did, and thus, the motion for judgment notwithstanding the verdict was properly denied.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**