761 A.2d 1013

David N. BOWEN, et ux.

v.

Elizabeth DAVISON, et al.

No. 2605, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Nov. 8, 2000.

**154**

William J. Chen, Jr. (Chen, Walsh, Tecler & McCabe, L.L.P., on the brief), Rockville, for appellants.

Brian G. Kim, Associate County Atty. (Charles W. Thompson, Jr., County Atty., Joann Robertson, Chief, Div. of Litigation and Karen L. Federman Henry, Principal Counsel for Appeals, on the brief), Rockville, for appellees.

Argued before KENNEY, ADKINS and KRAUSER, JJ.

ADKINS, Judge.

In this case we must analyze the Maryland Public Information Act ("PIA"), Md.Code (1984, 1999 Repl.Vol.), § 10–611 *et seq.* of the State Government Article ("SG"). David and Patricia Bowen, appellants, contend that the Circuit Court for Montgomery County erred in denying their request for certain public records held by Montgomery County and Elizabeth Davison, the official custodian of the public records at issue (collectively "appellees").

## FACTS AND LEGAL PROCEEDINGS

Appellants are residents of Montgomery County. In January 1999, they were in the process of reconstructing and remodeling their home. On January 29, 1999, they received a

letter from John P. Whitt, a Code Inspector for the Montgomery County Department of Housing and Community Affairs ("DHCA"), that informed appellants that their property was in violation of Chapter 26 of the Montgomery County Code and that the violations must be corrected by March 3, 1999. Appellants contacted Whitt, who informed them that he wrote the letter in response to a neighbor's complaint.

On February 1, 1999, appellants wrote a letter to Davison, the Director of the DHCA. In the letter, appellants explained the nature of the work being done on their property. Appellants informed Davison that they had an acrimonious relationship with a neighbor and believed that this neighbor filed the complaint. Additionally, appellants requested that the County "provid[e] [them] copies of any and all correspondence, from the complaining party or parties ... [and] [i]f no such correspondence exists, the County provid[e] a letter representing that fact, and stating therein the name (or names) of the parties who originated the complaint."

On February 4, 1999, Whitt visited appellants' home and found no violations. On February 12, 1999, Davison wrote appellants, informing them that no action would be taken against them at that time. Davison, however, refused to disclose the identity of the complainant because

it is this Department's policy not to reveal the name of a complainant in order to encourage citizen cooperation, and the County Attorney's Office will not reveal the name for the following reasons:

1. Informant privilege;

2. Investigatory privilege; and,

3. Article 10–618(f)(2)(iv) of the Maryland Public Information Act.

Appellant filed suit in the circuit court against Montgomery County, Davison, and Montgomery County Attorney Charles W. Thompson, Jr.,[1] seeking to obtain the identity of the informant. As part of the action, Davison submitted an

---

1. Thompson was subsequently dismissed from the case.

affidavit, admitting that the investigation of appellants closed on June 3, 1999. She further explained that DHCA frequently relies on citizen complaints in enforcing the building standards of the Montgomery County Code, and that "many of the informants request confidentiality [out] of a fear of retribution by the violating party. Of the 3,100 citizen complaints referred to above, 816 (or 26%) of the complainants requested anonymity." She further explained:

Whenever a request is made seeking the identity of this confidential source, I weigh the interest of the party seeking the identity of the confidential source against the public interest in maintaining the confidentiality of the complainant. In balancing these interests, I found that David and Patricia Bowen's interests in seeking to disclose the identity of the complainant in their case was not outweighed by the public interest established by the legislature under [SG] Section 10–618(f)(2)(iv). This was especially so because in Mr. Bowen's February 1, 1999, letter, he stated that "we have been requested to ascertain whether the complaint originated from the neighbors under statutory warning." Moreover, in that letter, Mr. Bowen described certain disputes that existed between the Bowens and some of their neighbors. It appeared to me that Mr. and Mrs. Bowen sought to determine whether or not the complaints made to the DHCA were made by their neighbors so that Mr. and Mrs. Bowen could retaliate against the complainant if, in fact, the complainant were a neighbor of the Bowens.

David Bowen also filed an affidavit. In the affidavit, he explained the nature of the feud that appellants had with a neighbor. He stated that he wished to receive the requested information to assist in "defense of any potential action brought by [DHCA]...." He acknowledged, however, that he "[a]lso, depending on the source and content of the complaint, may seek appropriate civil remedies."

After a hearing on appellants' motion for summary judgment, the court held that appellees were not required to disclose the requested information under the PIA. Specifically, the court reasoned that an investigation had occurred and that

confidentiality of the informant's identity was necessary to enforce the housing code provisions. This appeal followed.

## DISCUSSION

### A.

### Standard Of Review

■ Summary judgment is appropriate where there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501. In reviewing the grant of a motion for summary judgment, we review the trial court's ruling as a matter of law. *See Fearnow v. Chesapeake & Potomac Tel. Co. of Md.,* 104 Md.App. 1, 48, 655 A.2d 1 (1995), *rev'd on other grounds,* 342 Md. 363, 676 A.2d 65 (1996). In other words, we must determine whether the trial court was legally correct. *Nationwide Mut. Fire Ins. Co. v. Tufts,* 118 Md.App. 180, 186, 702 A.2d 422 (1997), *cert. denied,* 349 Md. 104, 707 A.2d 89 (1998). Additionally, we review the same information from the record and decide the same issues of law as the trial court. *See Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591–92, 578 A.2d 1202 (1990). Facts necessary to the determination of a motion may be placed before the court by pleadings, affidavit, deposition, answers to interrogatories, admission of facts, stipulations and concessions. *See Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 694, 425 A.2d 671 (1981). The instant case is dependent on a legal interpretation of the PIA. Therefore, resolution by summary judgment is appropriate.

### B.

### The Maryland Public Information Act

■ The PIA establishes a public policy that favors disclosure of government or public documents. *See Kirwan v. The Diamondback,* 352 Md. 74, 80, 721 A.2d 196 (1998). The PIA expressly provides that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees." SG § 10–

612(a). Thus, "[e]xcept as otherwise provided by law, a custodian shall permit a person or governmental unit to inspect any public record at any reasonable time." SG § 10–613(a). The Act must be construed liberally in favor of disclosure. *See A.S. Abell Pub. Co. v. Mezzanote,* 297 Md. 26, 32, 464 A.2d 1068 (1983); SG § 10–612(b).

The PIA, however, does provide exceptions to the general rule favoring disclosure. *See Office of the State Prosecutor v. Judicial Watch,* 356 Md. 118, 134–35, 737 A.2d 592 (1999). "These enumerated exceptions delineate certain types of records which are to be excluded from public inspections." *Office of the Att'y Gen'l v. Gallagher,* 359 Md. 341, 343, 753 A.2d 1036 (2000). For example, the PIA requires a custodian to automatically deny inspection of specific records. *See* SG §§ 10–616, 10–617. Likewise, a custodian must deny inspection of a public record if the inspection would be contrary to a state or federal statute, court rule, or court order. *See* SG § 10–615.

In the instant case, appellants were denied access to records under SG section 10–618(f)(2). This statute gives a custodian discretion to deny inspection of public records "if a custodian believes that inspection of a part of a public record by the applicant would be contrary to the public interest[.]" SG § 10–618. In pertinent part, SG section 10–618 provides:

(f) *Investigations.*—(1) Subject to paragraph (2) of this subsection, a custodian may deny inspection of:

(i) records of investigations conducted by the Attorney General, a State's Attorney, a city or county attorney, a police department, or a sheriff;

(ii) an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose; or

(iii) records that contain intelligence information or security procedures of the Attorney General, a State's Attorney, a city or county attorney, a police department, a State or local correctional facility, or a sheriff.

(2) A custodian may deny inspection by a person in interest only to the extent that the inspection would:

(i) interfere with a valid and proper law enforcement proceeding;

(ii) deprive another person of a right to a fair trial or an impartial adjudication;

(iii) constitute an unwarranted invasion of personal privacy;

**(iv) disclose the identity of a confidential source;**

(v) disclose an investigative technique or procedure;

(vi) prejudice an investigation; or

(vii) endanger the life or physical safety of an individual.

SG § 10–618(f) (emphasis added).

Appellants contend that the recent decision by the Court of Appeals in *Fioretti v. Board of Dental Examiners,* 351 Md. 66, 716 A.2d 258 (1998), mandates disclosure of the requested information because *"Fioretti* clarifies that once a governmental investigation has concluded, the importance of the seven enumerated harms of subsection (2) of [s]ection 618(f) are substantially alleviated, and inspection should be permitted." They argue that because the DHCA investigation has closed, there is no public interest served in not disclosing the name of the informant and Davison's concerns that appellants "could retaliate against the complainant" cannot "be used to deprive individuals of their rights."

In *Fioretti,* the Board of Dental Examiners sent Fioretti a letter stating that it had reason to believe that she "may have performed dental hygiene procedures without on-site supervision by a licensed dentist . . . ." *Fioretti,* 351 Md. at 69, 716 A.2d 258. The letter informed Fioretti that she should discontinue the unsupervised practice of dental hygiene and required her to sign and return an "Agreement" whereby she promised "only to practice dental hygiene in the State under the supervision of a licensed dentist who is physically on the premises and available for personal consultation." *Id.* at 70, 716 A.2d 258. After Fioretti's request to obtain a copy of the complaint lodged against her "was denied as a case under investigation," she filed suit to access the records. *Id.* at 70, 716 A.2d 258.

The Court reversed the trial court's dismissal of the action. The Court explained that because the Board was not one of the enumerated agencies in SG section 10–618(f)(1)(i), it "must demonstrate both that the records are 'an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose,' and that disclosure is not warranted 'to the extent that the inspection would' result in one of the enumerated harms." *Id.* at 78, 716 A.2d 258. Regarding the first element, the Court held that an agency "must, in each particular PIA action, demonstrate that it legitimately was in the process of or initiating a specific relevant investigative proceeding in order to come under the aegis of the exception." *Id.* at 82, 716 A.2d 258. The Court held that the Board failed to meet its burden to prove that the records were compiled for investigatory purposes because

> [the Board's] motion was not supported by any affidavits, a summary of the so-called investigatory files, or other relevant evidence. The only information [the Board] put forward relative to the first step of the PIA exemption inquiry was its bald assertion that because the Board may refer the matter from some form of administrative prosecution, the files it had compiled were of a law enforcement nature.

*Id.* at 83, 716 A.2d 258.

The Court further held that the Board failed to meet its burden on the second portion of the two-part test—that disclosure would result in one of the enumerated harms of SG section 10–618(f)(2). The Court explained that "where an agency fails to 'demonstrat[e] that the ... documents [sought] relate to any ongoing investigation or ... would jeopardize any future law enforcement proceeding[s],'" the exemptions would not prevent disclosure. *Id.* at 87, 716 A.2d 258 (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235, 98 S.Ct. 2311, 2323, 57 L.Ed.2d 159 (1978) (alterations in original) (further citations omitted)). Accordingly, because the Board failed to demonstrate that revealing the records would prejudice an investigation, the Court held that the trial court erred in granting the Board's motion to dismiss. *See id.* at 91, 716 A.2d 258.

In the instant case, appellees have satisfied the first part of the *Fioretti* test—that the agency "demonstrate that it legitimately was in the process of or initiating a specific relevant investigative proceeding in order to come under the aegis of the exception." *Id.* at 82, 716 A.2d 258. The DHCA investigates violations of the Montgomery County Code and enforces housing standards. *See Montgomery County Code* § 2–27(4). Davison's affidavit establishes that appellants were under investigation for violation of the Montgomery County Code. Moreover, David Bowen's affidavit establishes that Whitt visited appellants' residence to investigate the alleged violations and called appellants numerous times regarding the investigation. Under these circumstances, appellees satisfied their burden of proving that it was initiating an investigatory proceeding.

■ Appellants are correct in their contention that the appellees may not refuse to disclose the requested documents under SG section 10–618(f)(2)(i). This section permits the custodian to refuse to disclose documents when disclosure would "interfere with a valid and proper law enforcement proceeding." Under *Fioretti*, appellees may only refuse to disclose under SG section 10–618(f)(2)(i) when disclosure would interfere with an ongoing investigation or jeopardize future proceedings. In the instant case, Davison's affidavit establishes that the investigation against appellants has closed and there is no indication in the record that it would be reopened. Accordingly, the public interest that SG section 10–618(f)(2)(i) seeks to protect, preventing " 'agencies [from] be[ing] hindered in their investigations or placed at a disadvantage when it [comes] time to present their case,' " *Faulk v. State's Attorney for Harford County,* 299 Md. 493, 500, 474 A.2d 880 (1984) (quoting *Robbins Tire & Rubber Co.,* 437 U.S. at 224–25, 98 S.Ct. at 2318), is not present. For this reason, appellees may not refuse disclosure under section 10–618(f)(2)(i).

■ A different analysis, however, is required under SG section 10–618(f)(2)(iv). This section allows a custodian to

refuse disclosure in order to protect the identity of a confidential source. The parties have not cited, nor have we found, any Maryland case law that specifically addresses this section. A similar exception, however, exists under the federal Freedom of Information Act ("FOIA"),[2] and we may turn to case law interpreting FOIA for guidance. *See Faulk*, 299 Md. at 506–07, 474 A.2d 880 ("the language of [section 10–618(f)(2) ] is virtually identical to the language of its federal counterpart"); *Fioretti*, 351 Md. at 75–76, 716 A.2d 258 ("interpretations and reasoning of the federal courts addressing the 'investigatory files' exemption provided in section 552(b) of the FOIA ... are persuasive").

The primary purpose of the FOIA confidential source exception is not the potential of harm to the informant; rather, the paramount concern is the loss of providers of confidential information. *See Church of Scientology of California v. United States Dept. of Justice*, 612 F.2d 417, 426 (9th Cir.1979). "The purpose of the FOIA is to serve disclosure of federal agency activity, not as a means for private parties to find out what facts or opinions foreign, state or local law enforcement agencies have collected or made on them." *Id.* at 427. Indeed, unlike other FOIA exemptions which must be narrowly construed, *see Dept. of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), the confidential source exemption must be applied "robustly" in order to ensure the willingness of informants to come forward. *See Randle v. Bentsen*, 866 F.Supp. 1080, 1085 (N.D.Ill.1994). For this reason, the identity of a confidential source may not be revealed until the beneficiary of the confidentiality waives disclosure. *See Radowich v. United States Att'y*, 658 F.2d 957, 960 (4th Cir.1981).

---

**2.** 5 U.S.C. § 552(b)(2)(7)(D) provides, in pertinent part, that the Government may withhold:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source....

Exactly who may be classified as a confidential source under the FOIA was addressed by the Supreme Court in *United States Dept. of Justice v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). In *Landano*, a convicted murderer filed a FOIA request with the Federal Bureau of Investigation ("FBI"), seeking information to support a *Brady*[3] claim. The FBI released several hundred pages of documents, but refused to release a number of other documents under the confidential informant exemption. Before the Court, the FBI asserted that all of its sources should be presumed confidential and that "the presumption could be overcome only with specific evidence that a particular source had no interest in confidentiality." *Id.* at 174, 113 S.Ct. at 2021.

The Court held that the FBI was not entitled to a presumption of confidentiality. Citing legislative history, the Court reasoned that confidentiality does not depend on whether the agency typically regards the requested document as confidential, "but whether the particular source spoke with an understanding that the communication would remain confidential." *Id.* at 172, 113 S.Ct. at 2019–20 (citing S.Rep. No. 93–1200, at 13, U.S.Code Cong. & Admin. News pp. 6267, 6291). The Court, however, agreed with the FBI that certain circumstances may arise that will support an inference of confidentiality. *See id.* at 179, 113 S.Ct. at 2023. In so doing, the Court explained that

> [t]here may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred. . . . We agree that the character of the crime at issue may be relevant to determining whether a source cooperated with the [agency] with an implied assurance of confidentiality. So too may the source's relation to the crime.

*Id.* In other words, "where an investigative agency relies upon information supplied by individuals who might suffer severe

---

**3.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

detriment were their identities disclosed, assurances of confidentiality may be reasonably inferred." *Cuccaro v. Sec'y of Labor,* 770 F.2d 355, 360 (3rd Cir.1985).

In their brief, appellants contend that they are entitled to the requested documents because "[t]he record is devoid of any evidence of 'retribution' or 'retaliation' ... [and] any balancing of interest tips ... the scale in favor of [appellants]." The focus on the confidential source exception, however, is not the potential harm to an informant, or the motivation of the party seeking the information. Rather, the purpose of the exception is to assist law enforcement officials in gathering information by ensuring reluctant sources that their identities would not be disclosed. *See Church of Scientology,* 612 F.2d at 426. Indeed, federal courts have recognized that no balancing of the public interest should be done when determining whether to disclose the identity of a confidential source. *See New England Apple Council v. Donovan,* 725 F.2d 139, 145 (1st Cir.1984) (holding that if the government can show that an informant provided information under an express or implied assurance of confidentiality, "it need not then demonstrate ... that privacy interests outweigh the public interest in disclosure").

In the instant case, there is a strong public interest in the DHCA maintaining the confidential nature of its sources. According to Davison's affidavit, "the DHCA discovers alleged violations of the Housing and Building Maintenance Standards from complaints made by neighbors of the violating party as well as from other members of the general public." In fact, 816 of the 3,100 citizen complainants requested anonymity. If the DHCA could not ensure its informants that their identities would remain confidential, it could potentially lose its main source of information regarding code violations. For this reason, we hold that the DHCA may maintain the confidentiality of its sources, provided that the information was given under an express or implied assurance of confidentiality.

We have reviewed the record of the circuit court proceedings and find no indication of whether the information regard-

ing appellants' alleged code violations was given under a promise of confidentiality. Without such information, we cannot determine whether the informant gave information under the scope of the confidentiality exception. We, therefore, will remand this case to the trial court to determine whether the informant was guaranteed confidentiality when it reported appellants' alleged code violations. This determination may be made, on remand, by ordering a more complete factual development by the County, or by making an *in camera* inspection. *See Cranford v. Montgomery County,* 300 Md. 759, 781, 481 A.2d 221 (1984). If the informant was assured confidentiality, appellees may refuse disclosure under SG section 10–618(f)(2)(iv). If such assurances were not given, then appellees must disclose the requested information.

 We now address appellant's final argument, that appellees were required to file a petition under SG section 10–619 to deny disclosure, "and their failure to do so compromises any contention that the public interest requires non-disclosure of the 'confidential source.' " We disagree and explain.

SG section 10–619 allows a custodian to temporarily deny inspection of certain records. It provides, in pertinent part:

(a) *Permitted.*—Whenever this Part III of this subtitle authorizes inspection of a public record but the official custodian believes that inspection would cause substantial injury to the public interest, the official custodian may deny inspection temporarily.

(b) *Petition.*—(1) Within 10 working days after the denial, the official custodian shall petition a court to order permitting the continued denial of inspection.

Unlike SG sections 10–615 through 10–618, which list specific records that may be withheld from disclosure, section 10–619 is a "catch-all" provision that allows the custodian to exempt temporarily records in the "public interest". The Court of Appeals has recognized the limited purpose of the section 10–619 exception:

In the unusual case where a public policy factor should control but none of the specific exemptions applies, the

[PIA] provides for a special procedure to safeguard the material from disclosure. Under [section 10–619] a custodian may apply to a court for an order permitting him to deny disclosure in order to prevent substantial injury to the public interest.

*Cranford,* 300 Md. at 776, 481 A.2d 221.

We hold that the application procedure of section 10–619 does not apply to the section 10–618 exemptions. The purpose of the section 10–619 application procedure is to allow a court to determine whether disclosure of a document that does not fall under a specific exemption " 'would cause substantial injury to the public interest.' " *City of Baltimore v. Burke,* 67 Md.App. 147, 154, 506 A.2d 683, *cert. denied,* 306 Md. 118, 507 A.2d 631 (1986). In contrast, by expressing the enumerated exceptions in section 10–618, the Legislature has already determined that "the seven circumstances listed in [section] 10–618(f)(2) . . . are illustrative of the concerns that would make disclosure contrary to the public interest." *City of Baltimore v. Maryland Comm. Against the Gun Ban,* 329 Md. 78, 96, 617 A.2d 1040 (1993). Because the Legislature has already determined that it would be contrary to the public interest to disclose documents that fall under section 10–618, the section 10–619 hearing to determine whether disclosure of a document in unenumerated circumstances is not necessary.

Moreover, it is a well-established rule of statutory construction that we will look at the statutory scheme as a whole, because " 'the legislative intention is not determined from the statute alone, rather it is to be discerned by considering it in light of the statutory scheme.' " *Ofc. of People's Counsel v. Maryland Public Service Comm'n,* 355 Md. 1, 22, 733 A.2d 996 (1999) (quoting *GEICO v. Ins. Comm'r,* 332 Md. 124, 132, 630 A.2d 713 (1993)). No portion of the statutory scheme should be read "so as to render the other, or any portion of it, meaningless, surplusage, superfluous or nugatory." *GEICO,* 332 Md. at 132, 630 A.2d 713. We shall not interpret a statute in a way that is inconsistent with, or

ignores, common sense or logic. *See Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994).

If we accept appellant's contention that a custodian must apply to the circuit court for permission not to disclose a record, the judicial review process of SG section 10–623 would be rendered meaningless.[4] Indeed, there would be no need for a party requesting information to file a complaint with the circuit court if the custodian was required to petition the circuit court every time it denied inspection under section 10–618. For these reasons, we hold that a governmental unit is not required to file an application to the circuit court when it denies inspection under section 10–618.

**JUDGMENT VACATED. CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANTS, ONE–HALF BY MONTGOMERY COUNTY.**

---

4. SG section 10–623 provides, in pertinent part:
 (a) *Petition authorized.*—Whenever a person or governmental unit is denied inspection of a public record, the person or governmental unit may file a complaint with the circuit court for the county where:
 (1) the complainant resides or has a principal place of business; or
 (2) the public record is located.